Timothy MURPHY, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–98–131–CR.

Court of Appeals of Texas,
Waco.

Nov. 24, 1999.

Walter M. Reaves, West, Texas, for appellant.

John W. Segrest, Dist. Atty., Beth Toben, Asst. Dist. Atty., Waco, Texas, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

GRAY, Justice.

This case illustrates one of the usual defenses to aggravated sexual assault when the victim is very young—"I touched her but there was no penetration." The central issue in this appeal is what evidence is legally and factually sufficient to support the conviction? Is the victim's testimony that "he touched my private" enough? When you add to the victim's testimony a doctor's testimony regarding the anatomy of the female sexual organ, is that enough? What if you add the testimony of the victim's mother that she saw the appellant on the couch with his hand between the nine-year old victim's naked spread legs and could only see his fingers down to the second knuckle, but could not see the tips of his fingers? Because we hold the evidence both legally and factually sufficient, we overrule appellant's complaints and affirm the trial court's judgment.

## PROCEDURAL BACKGROUND

Timothy Murphy was convicted by a jury of aggravated sexual assault and sentenced to eight years in prison. TEX PEN. CODE ANN. § 22.021(a)(1)(B)(i) (Vernon Supp.1994). Murphy challenges his conviction by four points of error. His first two points assert that the evidence was legally and factually insufficient to support the verdict. Points three and four claim the trial court erred in allowing improper cross-examination of a defense witness during the punishment stage.

## FACTUAL BACKGROUND

Murphy was married to the mother of M., the 9–year old complainant, during the relevant time period. M. testified at trial about several occasions during which Murphy touched her "private." M. related a specific instance in which Murphy entered

her bedroom while she was sleeping, pulled down her underwear, and "rubbed" her "private." M. further testified that on another occasion she had just finished bathing and was wearing a towel when Murphy asked her to sit next to him on the couch and touched her "private." During this incident, M. testified that her mother entered the room at which time Murphy stopped touching her. M.'s mother testified that she witnessed this incident, after which she took M. and her other child to a neighbor's home and later notified the police.

## LEGAL AND FACTUAL SUFFICIENCY

Before a defendant may be found guilty of aggravated sexual assault of a child, Section 22.021 of the Texas Penal Code requires proof that the defendant intentionally or knowingly caused the penetration of the anus or female sexual organ of a child by any means. TEX. PEN.CODE ANN. § 22.021(a)(1)(B)(i). Murphy claims the evidence is both legally and factually insufficient to establish the element of penetration.

*Legal Insufficiency—applicable law*

When both legal and factual-sufficiency points of error are raised, the appellate court must first examine the legal sufficiency of the evidence. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App.1996). In determining whether the evidence is legally sufficient to support the verdict, we view the evidence in the light most favorable to the verdict, asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Weightman v. State*, 975 S.W.2d 621, 624 (Tex.Crim.App.1998); *Lane v. State*, 933 S.W.2d 504, 507 (Tex. Crim.App.1996) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)); *Westfall v. State*, 970 S.W.2d 590, 595 (Tex.App.—

Waco 1998, pet. ref'd). When the inferences raised by the evidence are in conflict, "we must presume that the trier of fact resolved any such conflict in favor of the prosecution and must defer to that resolution." *Turro v. State*, 867 S.W.2d 43, 47 (Tex.Crim.App.1993).

*The Evidence*

At trial, M. testified about at least two separate incidents in which Murphy touched what M. referred to as her "private." During the first incident, M. testified that Murphy entered her bedroom, lifted her nightgown, pulled down her panties, and "rubbed" her "private." M. indicated that Murphy had pulled her legs apart during this incident. The record indicates that M. demonstrated the manner in which Murphy touched her by using anatomically correct dolls. She used two fingers, and reiterated that the rubbing occurred on her "private area." Upon questioning by the prosecutor as to whether or not it hurt when Murphy did this, M. replied, "kind of."

M. related another incident when, just after her bath, she entered the dining room wearing a towel to retrieve her clothes. She said that Murphy asked her to sit with him on the couch, and he proceeded to touch her "private." She testified that Murphy also used two fingers during this incident. M. further testified that this time, Murphy used a "cream colored lotion" which he rubbed on her "private."

The prosecutor later asked M. to describe her "private" so that the prosecutor could draw a diagram showing the way M. was touched. M. told the prosecutor to draw two flaps of skin and two holes, a "first hole" and a "second hole." She also told the prosecutor to draw "a little bit of skin that sticks out" on either side of the first hole. She indicated that Murphy rubbed her at the "first hole" and sometimes at the "second hole," and that it

would hurt when he rubbed the second hole.

Cindy Murphy, M.'s mother, testified that she walked into the room during the incident in which Murphy was on the couch touching M. She also stated that she saw Murphy's hand between M's legs, which were apart. She could see part of Murphy's hand, above the second knuckle, but could not see the tips of his fingers.

The State called Dr. Lauren Barron, a physician who examined M. several days after the second incident. Dr. Barron testified that her examination of the patient revealed no genital abnormalities. She also testified that, due to the "destendable" (flexible) design of the female genitalia, penetration by a finger or other instrument would not necessarily have been evident from the examination she performed. Dr. Barron concluded from her examination that she could neither confirm nor eliminate the possibility of penetration. She also testified to the general structure of the female sexual organ, stating that it includes the labia majora, the labia minora, the clitoris and the vagina introitus. She stated that, in general, a woman's legs must be spread apart before the area beneath the labia majora (including the urethra, labia minora, and vagina introitus) can be exposed.

*Penetration—applicable law*

 The State may prove penetration by circumstantial evidence. *Villalon v. State*, 791 S.W.2d 130, 133 (Tex.Crim.App. 1990). The victim need not testify as to penetration. *Id.* Evidence of the slightest penetration is sufficient to uphold a conviction, so long as it has been shown beyond a reasonable doubt. *Luna v. State*, 515 S.W.2d 271, 273 (Tex.Crim.App.1974); *Rodriguez v. State*, 762 S.W.2d 727, 732 (Tex.App.—San Antonio 1988), *pet. dism'd as improvidently granted*, 815 S.W.2d 666 (Tex.Crim.App.1991). In *Vernon v. State*, the Court of Criminal Appeals determined

what constitutes a "penetration" for purposes of aggravated sexual assault. That court held:

> [M]ere contact with the outside of an object does not amount to penetration of it. But pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact. Consequently, it is not ungrammatical to describe Appellant's touching of complainant in this case as a penetration.

841 S.W.2d 407, 409 (Tex.Crim.App.1992).

*Application of Law to Facts*

 In this case, M. testified that Murphy rubbed her "first and second holes", that it was painful when Murphy did so, and that Murphy used two fingers and lotion during the incident. Her mother testified that she observed Murphy and M. on the couch, with M.'s legs spread apart and Murphy's hand between M.'s legs, touching her pubic area. She could see part of Murphy's hand, but not the tips of his fingers. In light of this evidence and the medical testimony describing the structure of the female genitalia, a reasonable fact-finder could have concluded that Murphy's fingers penetrated M.'s sexual organ if they reached beyond the outer layer of skin comprising the external genitalia or labia. The evidence is thus legally sufficient to support the jury's verdict. Murphy's first issue is overruled.

*Factual Sufficiency—applicable law*

In his second issue, Murphy asserts the evidence is factually insufficient to establish the element of penetration. In conducting a factual-sufficiency review, we examine all of the evidence impartially, without the prism of "in the light most favorable to the verdict," and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to

be clearly wrong and unjust. *Cain v. State*, 958 S.W.2d 404, 410 (Tex.Crim.App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). When performing our review, we give due deference to the fact finder's assessment of the weight and credibility of the evidence. *Calhoun v. State*, 951 S.W.2d 803, 810 (Tex.App.— Waco 1997, pet. ref'd). We will defer to the jury, finding the evidence factually insufficient only where necessary to prevent manifest injustice. *Cain*, 958 S.W.2d at 407.

### The Evidence

As a component of our duty to examine all of the evidence, Murphy invites us to consider the lack of physical evidence of penetration, as well as M.'s testimony that Murphy merely "touched" or "rubbed" her. Murphy also cites the failure of the victim's mother to contact the police for several days after she witnessed the incident. Finally, Murphy asks us to consider his own denial of the incident, his testimony that he was taking medication at that time which limited his sex drive, and the victim's mother's decision to move back in with Murphy within a month after the incident.

### Application of Law to Facts

■ The lack of physical evidence of penetration in this case does not render the evidence factually insufficient where the treating physician testified that her examination could neither establish nor preclude the possibility that M.'s sexual organ was penetrated. Although M. used inexact terms to describe the incident, she sufficiently communicated the area on her body that Murphy touched. In view of the medical testimony as to the structure of the female genitalia, the testimony of the victim and the testimony of the victim's mother, a conclusion that Murphy caused the penetration of M.'s sexual organ is not so contrary to the overwhelming weight of the evidence as to be clearly unjust.

Murphy's contentions regarding the side effects of his medication do not directly contradict any evidence tending to establish the assault. The same holds true for evidence of the victim's mother's failure to immediately notify the police, or her decision to cohabitate with Murphy after the incident.

Although Murphy denied any inappropriate contact with M., the trier of fact is the sole judge of the weight and credibility of the witnesses and may believe or disbelieve all or any part of any witness' testimony. *Williams v. State*, 692 S.W.2d 671, 676 (Tex.Crim.App.1984). We do not resolve any conflict in fact or evaluate the credibility of the witnesses. *See Juarez v. State*, 796 S.W.2d 523, 524 (Tex.App.—San Antonio 1990, pet. ref'd). After reviewing all of the evidence offered at trial, we cannot say that the verdict is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis*, 922 S.W.2d at 129 (Tex.Crim.App. 1996). Murphy's second issue is overruled.

### HAVE YOU HEARD?

In his third issue, Murphy contends the trial court erred in allowing the State to improperly impeach a character witness during the punishment phase with a "have you heard" question. Specifically, Murphy asserts the State failed to establish a proper factual basis for the question and that the question was not relevant to the trait testified to by the witness.

■ Under Texas Rule of Evidence 405(a), a defendant may offer reputation and opinion evidence of his good character, and character witnesses may be cross-examined regarding their awareness of specific instances of the defendant's conduct. TEX.R. EVID. 405(a). Before such cross-examination can take place, the State must establish a two-part predicate for the question. First, there must be a factual basis

for the incidents inquired about; and second, the incidents must be relevant to the character trait at issue. *Lancaster v. State,* 754 S.W.2d 493, 496 (Tex.App.—Dallas 1988, pet. ref'd.). The predicate must be laid outside the jury's presence. *Id.*

*Factual Basis*

Murphy's mother was called by defense counsel during the punishment phase of the trial. She testified that Murphy was a Christian, loves his family, attends church, and is a good father and a good son. She further testified that Murphy had never been convicted of a felony and asked that the jury consider probation. On cross-examination, the prosecutor asked her if she had heard that Murphy had been convicted of indecent exposure in 1977. The defense objected, and a hearing was held outside the presence of the jury to determine the State's good faith basis for posing the question. The prosecutor stated that she had the judgment, Murphy's criminal history, and the offense report indicating that Murphy's mother bonded him out after his arrest. Still outside the presence of the jury, the Court allowed the State to introduce the offense report and the judgment of conviction for record purposes only and to cross-examine Murphy's mother about the conviction. She testified that she did not remember the incident. The Court ruled that the State had a good faith basis for the question and allowed the State to continue its cross-examination before the jury. In front of the jury, Murphy's mother indicated that she remembered the conviction,[1] but could not say whether such knowledge would change her opinion that probation was appropriate.

*Applicable Law and Application—good faith basis*

■ Murphy asserts that only evidence that would be admissible at trial may serve as a prosecutor's good-faith basis for a "have you heard" question. The Court of Criminal Appeals, however, has made it clear that a good-faith basis may rest on evidence that would not necessarily be admissible at trial, such as an offense report,[2] investigation report,[3] and arrest record.[4] This is because such questions "are designed not to discredit the person on whose behalf the witness is testifying, but ... to affect the weight of the witness's testimony." *Brown v. State,* 477 S.W.2d 617, 620 (Tex.Crim.App.1972). The risk that the jury will consider the content of the question as substantive evidence is mitigated by the requirement that the prosecutor have a good faith basis to believe that the incident actually occurred. *Starvaggi v. State,* 593 S.W.2d 323 at 328. Here, the offense report and judgment of conviction sufficiently provided a good faith basis for inquiry into the witness's awareness of the incident.

*Applicable Law and Application—relevance of incident*

■ The incidents forming the basis of the "have you heard" question must also be relevant to the character trait at issue. *Lancaster v. State,* 754 S.W.2d at 496. Here, Murphy placed his suitability for probation at issue by calling witnesses who offered their assistance in ensuring that Murphy would abide by the conditions of his probation. By doing so, Murphy "opened the door" for evidence of specific instances of misconduct that would tend to mitigate against suitability for probation.

---

1. It was not clear if her affirmative answer was based upon the evidence she heard at the hearing outside the presence of the jury or if it was based on other information.

2. *Starvaggi v. State,* 593 S.W.2d 323, 328 (Tex.Crim.App.1979).

3. *Stone v. State,* 583 S.W.2d 410, 416 (Tex.Crim.App.1979).

4. *Love v. State,* 533 S.W.2d 6, 10 (Tex.Crim.App.1976).

*Griffin v. State,* 787 S.W.2d 63, 67 (Tex. Crim.App.1990); *Murphy v. State,* 777 S.W.2d 44, 67–68 (Tex.Crim.App.1988); *Anderson v. State,* 896 S.W.2d 578, 579 (Tex.App.—Fort Worth 1995, pet. ref'd). Murphy's third issue is overruled.

## "HAVE YOU HEARD" VERSUS "DID YOU KNOW"

■ In his fourth issue, Murphy contends the trial court erred in allowing the State to impeach Murphy's mother with a "have you heard" question because she was not a character witness. A witness who testifies as to the good character of the defendant may be cross-examined on relevant specific instances of misconduct that would tend to affect the witness's opinion. Tex.R. Evid 405(a); *Lancaster v. State,* 754 S.W.2d at 495. As discussed above Murphy's mother testified that Murphy was a Christian, attended church, was a good father and a good son, and had never been convicted of a felony. She opined that he was a good candidate for probation and therefore the jury should consider Murphy for probation. She offered to take responsibility for him until he discharges the conditions of the probation. As also discussed above, this testimony placed Murphy's suitability for probation at issue in that the witness offered her opinions as to his suitability, and her support in ensuring that Murphy would meet the conditions of his probation. *Griffin v. State,* 787 S.W.2d at 67. The State then had the right to offer evidence tending to rebut Murphy's suitability for probation, including specific instances of misconduct if the prosecutor had a good faith belief that the misconduct occurred. Tex.R. Evid 405(a); *Lancaster v. State,* 754 S.W.2d at 495. Murphy's fourth issue is overruled.

■ Murphy notes in his brief that, to the extent his mother was a character witness, she was an opinion witness only

and it was therefore improper for the State to pose to her a "Have you heard?" question as opposed to a "Did you know?" question. Traditionally, character witnesses who testify to their first-hand perceptions of the defendant are cross-examined with "do you know" questions, while witnesses who testify to the defendant's reputation in the community are cross-examined with "have you heard" questions. *Rutledge v. State,* 749 S.W.2d 50, 53 (Tex. Crim.App.1988). The purpose of a "have you heard" question is to test the extent of the witness's knowledge of the defendant's reputation in the community. *Id. See* 1 Steven Goode et al., Texas Practice: Guide to the Texas Rules of Evidence: Civil and Criminal § 405.2.4 (2d ed.1993). The traditional view is that a witness who has testified to knowledge of the defendant's reputation in the community can be impeached by questions of whether he has heard about specific instances of conduct inconsistent with that reputation. *Rutledge,* 749 S.W.2d at 53. Conversely, a witness who testifies as to his personal opinion of the defendant's character cannot be discredited by rumors circulating in the community that would be unlikely to affect his opinion even if he had heard them. Goode et al., *supra.* This distinction was the state of the law when the rules of evidence were adopted in 1985. The seminal case was *Rutledge,* which was tried before the new rules were in effect. *Rutledge,* 749 S.W.2d 50, 51. However, Texas Rule of Evidence 405(a) does not draw a distinction between "reputation" witnesses and "opinion" witnesses, nor does the rule itself limit cross-examination of character witnesses to any particular form. The rule provides:

> In all cases in which evidence of a person's character or character trait is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. In a criminal case, to be qualified to testify at the guilt stage of a trial concerning the

character or character trait of an accused, a witness must have been familiar with the reputation, or with the underlying facts or information upon which the opinion is based, prior to the day of the offense. In all cases where testimony is admitted under this rule, on cross-examination inquiry is allowable into relevant specific instances of conduct.

Tex.R. Evid. 405(a).

The drafters of Federal Rule of Evidence 405(a), which is essentially identical to the Texas rule, apparently found that the distinctions between "have you heard" and "did you know" questions "are of slight if any practical significance and the second sentence of subdivision (a) [which is the last sentence of the Texas rule] eliminates them as a factor in formulating questions." Fed R. Evid. 405(a) advisory committee's note. As Professor Wendorf states:

> While it is clearly preferable to focus the witnesses' attention more precisely on what they have heard or on what they know, the ultimate purpose of the last sentence of Rule 405(a) is to determine whether the witnesses really know what they are talking about when they offer either opinion or reputation testimony about another person.

Hulen D. Wendorf et al., Texas Rules of Evidence Manual, IV–113 (5th ed.1995).

In the present case, the prosecutor's good faith basis for asking Murphy's mother if she had heard of the indecent exposure conviction stemmed from the indication on the offense report that his mother posted his bond. Although imprecise language was used, it is clear from the record that the prosecutor was probing the witness's personal knowledge of the incident, not testing the witness's awareness of the defendant's reputation in the community.

Additionally, a review of the record reveals Murphy's objection focused the court's attention on the good faith basis for the question and not the form of the question. Even if the objection was adequate, and it is determined that the trial court erred in allowing the question in its given form, we hold it was harmless.

## CONCLUSION

Having overruled all issues about which Murphy complains, the judgment of the trial court is affirmed.