**Lawrence Gene QUINTON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 10–00–090–CR, 10–00–091–CR.**

Court of Appeals of Texas,
Waco.

Aug. 15, 2001.

Judith L. White, Judith L. White, P.C., Garland, for appellant.

John W. Segrest, McLennan County Crim. Dist. Atty., Waco, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

VANCE, Justice.

In January 1999, two indictments were filed against Lawrence Quinton. In Cause No. 99–79–C, it was alleged in four counts that from 1989 to 1993, Quinton committed five acts of aggravated sexual assault of a child under age fourteen and indecency with a child younger than seventeen. The victim was his step-daughter, N.Q., who was between the ages of five and nine during those years. TEX. PEN.CODE ANN. §§ 22.021, 21.11 (Vernon Supp.2001). In Cause No. 99–80–C, it was alleged in five counts that from 1993 to 1997, Quinton committed six acts of aggravated sexual assault of a child under age fourteen and indecency with a child younger than seventeen against his niece, K.W. She was also between the ages of five and nine during those years. The cases were tried together, and Quinton was convicted on all counts. The court sentenced Quinton to seventy-five years for seven acts of aggravated sexual assault, twenty years for three acts of indecency with a child, and ten years for one act of indecency with a child, all sentences to run concurrently.

About two months after trial, N.Q. recanted. (K.W. did not.) After a hearing on a motion for a new trial based on the recanted testimony, the court denied the motion.

Quinton brings various points on appeal. They can be placed into five groups.

1. The trial court erred in not granting a new trial because of the recanted testimony.

2. The trial court erred in allowing the State during the punishment phase of the trial to question a reputation

witness called by the defense with "have you heard" questions.

3. The trial court erred in not granting a mistrial after sustaining a defense objection about the State's closing argument during the punishment phase of the trial.

4. The evidence was legally and factually insufficient to prove Quinton guilty of one of the five acts allegedly committed against N.Q.

5. The evidence was legally and factually insufficient to prove him guilty of three of the six acts allegedly committed against K.W.

We will affirm the judgment in part and reverse it in part.

## THE RECANTATION

### *The Legal Standard*

For trials on or after September 1, 1993, motions for new trial based on newly discovered evidence, including recanted testimony, are governed by article 40.001 of the Code of Criminal Procedure. Tex. Code Crim. Proc. art. 40.001 (Vernon Supp.2001); *Ashcraft v. State*, 918 S.W.2d 648, 652-53 (Tex.App.—Waco 1996, pet. ref'd); *Driggers v. State*, 940 S.W.2d 699, 708 (Tex. App.—Texarkana 1997, pet. ref'd); *Monse v. State*, 990 S.W.2d 315, 317 (Tex.App.—Corpus Christi 1999, pet. ref'd). It states: "A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." Before September 1, 1993, the now repealed Rule of Appellate Procedure 30(b)(6) applies. It read: "A new trial shall be granted an accused for the following reasons: ... (6) Where new evidence favorable to the accused has been discover-

ed since trial ...." Tex.R.App. P. 30(b)(6) (repealed, and replaced by article 40.001).[1]

 Under both the statute and the rule, the standard of review for the denial of a motion for a new trial is abuse of discretion, *i.e.*, whether the denial was arbitrary or unreasonable. *Ashcraft*, 918 S.W.2d at 652. The trial court is arbitrary or unreasonable in denying the motion if the record reflects: (1) the newly discovered evidence was unknown to the movant at the time of trial; (2) the movant's failure to discover the evidence was not due to his want of diligence; (3) the evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the evidence is probably true and would probably bring about a different result in another trial. *Moore v. State*, 882 S.W.2d 844, 849 (Tex.Crim.App.1994); *Ashcraft*, 918 S.W.2d at 653. "[I]n cases 'where a witness has testified to material inculpatory facts against an accused and after verdict, and before motion for new trial has been acted on, such witness makes affidavit that he testified falsely,' the general rule is that the new evidence is probably true and a new trial should be granted." *Ashcraft*, 918 S.W.2d at 653 (quoting *Williams v. State*, 375 S.W.2d 449, 451 (Tex.Crim.App.1964)). An exception to the general rule occurs when the trial court finds the recantation to not be credible based on the trial evidence and the evidence at a hearing on the motion. *Id.*; *Driggers*, 940 S.W.2d at 709; *Monse*, 990 S.W.2d at 318. "Credibility" is measured by whether the recantation is "probably true." *Ashcraft*, 918 S.W.2d at 653; *Driggers*, 940 S.W.2d at 709.

### *Application as to N.Q.*

We begin our analysis by reviewing the state of the evidence in cases in which the

---

**1.** Rule 30(b)(6) governs cases in which the offense was committed on or after September 1, 1986. *Ashcraft*, 918 S.W.2d at 652.

finding of an incredible recantation and the denial of a new trial was found not to be an abuse of discretion.

In *Ashcraft*, the trial court evaluated the trial evidence about whether the abuse happened as well as the evidence at the hearing on the motion for new trial. *Ashcraft*, 918 S.W.2d at 654. The evidence at trial was that the child, who was twelve at the time of the abuse, made an outcry statement to her school counselor who had eleven years of experience, made another statement to a doctor who examined her, and was found during the doctor's examination to have a torn hymen and blunt force penetrating trauma. *Id.* The evidence at the hearing was that the child disliked foster care and wanted to return home, was being pressured by her mother—who never believed her—during weekend visits to recant, and had been led to believe that if she recanted she could go to England to live with her aunt and sister. *Id.* On the day the child signed the recanting affidavit, her mother took her unexpectedly to the defense attorney's office where she was told her father could get a life sentence for the crime. *Id.* Then her mother took her to the District Clerk's office where she was shown the photograph of her vagina which was used at trial, which she did not previously know, and the child became angry and ashamed. *Id.* Finally, her mother took her back to the defense attorney's office where she signed the affidavit. *Id.* The child testified at the hearing on the motion that she lied about the abuse because she was angry with her father for not protecting her from sexual assault by intercourse six or seven years earlier by the seven-year-old younger brother of the babysitter. *Id.* However, the doctor who examined her testified the vaginal injuries he found could not reasonably have been caused by a seven-year-old. *Id.*

In *Driggers*, the trial court heard testimony from the child (age six at the time of the abuse) at the hearing on the motion for new trial that she lied because her father gave her a hard whipping and she was angry. *Driggers*, 940 S.W.2d at 709. However, the child admitted her grandparents would no longer speak to her, she had been sad over the matter, and her mother's new boyfriend called her a liar. *Id.* A CPS worker testified that the mother could not remember the circumstances of the first recanting, that the child told the worker she could not remember whether anyone told her what to say in her recantation, and that the child's spontaneous answers during her original interview were markedly different from her reflective, hesitant answers during her recantation interview. *Id.* Finally, a counselor testified that a young child has extreme difficulty dealing with incest without the help of counseling (the child's mother never took her to counseling after the incident), and that the impact of the child's mother and her boyfriend calling her a liar would be immense. *Id.*

In *Monse*, the defendant pled guilty and signed a judicial confession after being shown statements by the child and her mother about the abuse. *Monse*, 990 S.W.2d at 317. The child and her mother recanted, after which the defendant said for the first time that he was drunk when the alleged abuse occurred, could not remember what happened, and simply took the child's word that he had abused her. *Id.* The motion for new trial was based solely on the filed recanting affidavits of the child and her mother. *Id.* The child's affidavit stated she lied so she could move out and live with her grandparents or biological father. *Id.* The mother's affidavit stated the child did not make the outcry statement to her, and that the child's grandparents had admitted coaching the child to lie about the abuse. *Id.* However,

part of the child's original statement was that her mother initially told her not to tell her grandparents about the abuse because Child Protective Services would get involved and that the defendant would have to move out. *Id.* This coupled with the defendant's signed confession and his failure to previously mention he was drunk and did not remember what had happened supported the denial of the motion.

■ The evidence pertaining to N.Q.'s recantation compares favorably with these cases. N.Q. testified at trial about multiple incidents of sexual abuse by Quinton. There was some medical evidence to support her story based on an examination by a physician, who also testified that N.Q. told him Quinton abused her. N.Q. recanted two months after trial around Christmas. She was estranged from her mother and living with Quinton's father and sister, who helped her prepare written, audio-recorded, and videotaped recantations.

At the hearing on the motion for new trial and in her written recantation, N.Q. said she lied "to get attention" because she never got to go places like her sister. She said she was now telling the truth because she needed both her parents, and "My mom really needs him so bad. I just want my family back together." At the hearing, N.Q. spoke so softly that at one point the judge admonished her there was no point in conducting the hearing if she would not speak loudly enough to be heard. She also testified at the hearing that she did not remember what she testified to at trial. She gave contradictory answers about whether she had spoken with Quinton since he had been in jail. Other testimony was she had spoken with Quinton who told her he was sorry, that he couldn't "take it" in jail, and that he would kill himself in prison.

The trial court was in a position to judge N.Q.'s demeanor both at trial and at the hearing. Based on the record, we cannot say he abused his discretion in finding the recantation incredible.

### Application as to K.W.

■ Even if the court had granted a new trial on the indictment pertaining to N.Q., we fail to see how that would entitle Quinton to a new trial as to K.W. She did not recant. Furthermore, the credibility of her trial testimony that Quinton sexually abused her did not rest on whether N.Q. was telling the truth about Quinton's abuse of K.W. Therefore, the trial court did not abuse its discretion in denying the motion for a new trial as to K.W.

### Conclusion

This issue is overruled.

### IMPROPER QUESTIONING OF A WITNESS

During punishment, Quinton called his wife, who testified:

Q: Now, ma'am, have you known your husband to have any problems with law enforcement?

A: No.

Q: To have been arrested or convicted of any offense in Texas?

A: No.

■ On cross-examination by the State, the prosecutor at a bench conference requested to ask have-you-heard questions about an investigation of Quinton in 1994 for indecency with a child. Quinton objected that the evidence was irrelevant, that its prejudicial effect outweighed its probative value, and that "there is no foundation that she had knowledge of the investigation." The court overruled the objections, and this exchange occurred:

Q: Ms. Quinton, have you heard that your husband went on a camping trip

with six other girls without adult chaperone?

A: Yes.

Q: And he was the only adult. There was no female chaperone. Have you heard that?

A: Yes.

Q: And have you also in connection with that heard that back in June of 1994 an investigation was done by the McLennan County Sheriff's Department regarding allegations of Indecency with a Child with a complainant by the name of Lamonica Sypho?

A: Yes.

Q: And Lamonica Sypho, she is not a relative of yours, is that correct?

A: No, ma'am.

On redirect, defense counsel asked: "Ms. Quinton, what did the investigation result in?", to which Ms. Quinton responded: "From my understanding, everything was dropped."

Quinton made no objections to the charge which did not include a limiting instruction about the use of the have-you-heard questions.

■ Assuming *arguendo* that this line of questioning was improper, there was no harm. We will disregard any "error, defect, irregularity, or variance that does not affect substantial rights." TEX.R.APP. P. 44.2(b). Quinton's defense lawyer brought out that the investigation had been dropped. Also, there was no implication that Quinton was indecent with any of the six girls on the camping trip. In addition, also during the punishment phase, two female relatives of Quinton testified that when one was eleven and the other was in junior high, Quinton asked them for sex which they refused. A third female relative testified that when she was sixteen, Quinton fondled her leg when she was asleep and asked her for sex which she

refused. Considering Quinton's rebuttal of the have-you-heard questions, and all the other testimony that the jury heard first-hand from victims about Quinton's sexual misconduct with minors, this brief line of questioning could not reasonably have influenced the jury's decisions about sentences. Therefore, this issue is overruled.

## IMPROPER ARGUMENT

■ During the State's closing argument at the punishment phase, the prosecutor made the remark that the jury should not place Quinton on probation because there was nothing the probation department could do to help Quinton.

[Appellant] said that he is sick. You cannot change a person who does not think that they have a problem. You heard him testify yesterday, he is the victim. He has no problem. He is in this situation as a result of what [his mother-in-law] has done to him and all of her hatred. Ladies and gentlemen, the probation department cannot do anything for someone like that, and he is going to continue—

Quinton objected, the court sustained the objection, and the court instructed the jury to disregard the remark. Quinton's motion for mistrial was denied. Quinton complains that he was unfairly prejudiced because the remark implied there was unproffered detrimental evidence about Quinton, and the court should have granted the mistrial. "[T]he trial court's denial of the motion for mistrial is not error if the court's instruction to disregard the improper jury argument was sufficient to cure the prejudicial effect of the argument." *Chimney v. State*, 6 S.W.3d 681, 703 (Tex.App.—Waco 1999, pet. filed).

We reject Quinton's argument that the prosecutor's remark necessarily implied that there was unproffered detrimental ev-

idence about Quinton. It could just as easily be construed as a logical inference based on the fact that when Quinton testified he did not accept responsibility for his acts. However, assuming *arguendo* that the remark was improper, the instruction to disregard cured any potential for harm, considering that the jury sentenced Quinton to the high range, seventy-five years, on all the aggravated-sexual-assault offenses, and to the maximum punishment, twenty years, on three of the four indecency-with-a-child offenses. It is highly unlikely that without the remark, the jury would have granted probation or given a significantly lower sentence. Therefore, this issue is overruled.

## LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

Quinton complains that the evidence was legally and factually insufficient to support the convictions on one of the five offenses alleged in Cause No. 99–79–C, and three of the six offenses alleged in Cause No. 99–80–C.

### The Legal Standards

#### a. Legal sufficiency

 In reviewing a legal sufficiency challenge, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Lane v. State*, 933 S.W.2d 504, 507 (Tex.Crim.App.1996) (citing due process standard from *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

#### b. Factual sufficiency

 In contrast, in reviewing a challenge to the factual sufficiency of the evidence, we must view all the evidence without the prism of the "in the light most favorable to the prosecution" construct.

*Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996); *Perkins v. State*, 19 S.W.3d 854, 855 (Tex.App.—Waco 2000, pet. ref'd). This court "asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000).

### The Evidence Regarding N.Q.

 Quinton asserts that N.Q. testified Quinton did not penetrate her vagina with his finger as alleged in Count 1, paragraph 1 in Cause 99–79–C. The record shows, however, only that N.Q. did not testify Quinton penetrated her vagina with his finger. The medical testimony was that N.Q. too easily accepted medical instruments into her vagina during an examination, implying that other objects had been inserted into it in the past. Penetration can be proved by circumstantial evidence. *Murphy v. State*, 4 S.W.3d 926, 928 (Tex.App.—Waco 1999, pet. ref'd). In addition, there is other evidence that penetration occurred. Dr. Susan Nickel testified that she obtained a medical history from N.Q. during which she told the doctor "[Quinton] would do this with his fingers and his hands in my vaginal area. (Indicating) And then she went on to say that he had touched her. ... She said it was under her clothes, and he forced me to have sex with him." Although no effort was made by either party to clarify the record regarding the witness's demonstration of how N.Q. related the manner in which Quinton touched her, we presume that the testimony supports the jury's findings. Considering this evidence, we conclude that the evidence is both legally and

factually sufficient. Therefore, Quinton's issue as to Count 1, paragraph 1 in Cause No. 99–79–C is overruled.

### The Evidence Regarding K.W.

 Quinton asserts that K.W. testified Quinton did not touch her anus as alleged in Count 2, paragraph 1, did not penetrate her anus with his penis as alleged in Count 3, and did not penetrate her vagina with his penis as alleged in Count 4, all in Cause No. 99–80–C.

The record shows that K.W. testified Quinton did not touch or penetrate her anus. However, there was medical testimony of a tear in K.W.'s anus. Penetration can be proved by circumstantial evidence. See Murphy, 4 S.W.3d at 928. We conclude that the evidence is legally sufficient. However, because there is no other evidence on the issues, we conclude that the evidence is not factually sufficient. Therefore, the factual sufficiency issue is sustained as to Count 2, paragraph 1, and Count 3 in Cause No. 99–80–C.

 However, the record shows that K.W. testified Quinton penetrated her vagina with his penis. Furthermore, there was medical testimony that for a child her age, K.W.'s vaginal opening was enlarged and her hymen tissue was reduced. Therefore, Quinton's issue as to Count 4 in Cause No. 99–80–C is overruled.

### CONCLUSION

The evidence was factually insufficient to support the convictions on Count 2, paragraph 1, and Count 3 in Cause No. 99–80–C. However, we have overruled all of Quinton's other issues.[2] Therefore, we affirm the judgment as to Count 1, paragraphs 1 and 2, Count 2, Count 3, and

Count 4 in Cause No. 99–79–C, and as to Count 1, Count 2, paragraph 2, Count 4, and Count 5 in Cause No. 99–80–C. We sever Count 2, paragraph 1, and Count 3 in Cause No. 99–80–C and remand the severed cause for a new trial on those offenses.

Justice GRAY concurring and dissenting.

GRAY, Justice, concurring and dissenting.

The majority has decided the evidence is factually insufficient to find that Quinton committed the following:

1. Indecency with a child by touching K.W.'s anus (Count 2 paragraph 1); and

2. Aggravated sexual assault of K.W. by penetrating her anus (Count 3). I do not agree.

#### OFFENSES AGAINST K.W.

With regard to these two offenses against K.W., I find the evidence factually sufficient. It is important to note regarding the indecency with a minor offense that it does not specify with what Quinton touched K.W.'s anus. Thus touching her anus with either his finger or his penis is sufficient.

The primary evidence not considered or discussed by the majority regarding the offenses against K.W. came from N.Q. who was an eyewitness to one of the incidents. N.Q. testified as follows:

Q: And what happened then?
A: He came in, and he told K … [W] to be quiet, and he put his penis in her anus.
Q: Her anus?
A: Yes.

for aggravated sexual assault for which he received a seventy-five-year sentence.

<hr/>

2. We note that regardless of the final disposition of these offenses, Quinton has at least one remaining conviction in each indictment

Q: Where is the anus in relationship to the vagina?

A: It's in your bottom.

Q: It's in your bottom too. Is it part of your bottom as well? Is that what you are talking about?

A: Yes.

Q: How do you know that he put it in her anus? What did you see? Did you see him do that?

A: Yes.

Q: Did you see his penis that day?

A: No.

Q: Did you see her bottom?

A: Yes. Her clothes were down.

Q: Her clothes were down.

A: Yes.

Q: How do you know that he had his penis inside of her if you didn't see it?

A: Because his pants unzipped.

Q: Okay. And how was she positioned?

A: In the dog style.

Q: When you say dog style, what do you mean?

A: Like she was on her knees on the floor.

This incident was also described by K.W. She testified that during this incident Quinton was feeling on her "behind" and that she remembered him "feeling on her butt." She was five years old at the time of this incident.

In describing the other incident, K.W. gave the following testimony:

Q: What happened then, K . . . [W]?

A: He was trying to put it in my behind.

Q: Put what in your behind?

A: It felt like his private.

Q: Felt like his private?

A: Yes.

Q: What made you think it was his private?

A: Because it was hard.

Q: Hard? Is that the similar feeling you had had when he put it in your vagina?

A: Yes.

Q: How did he get it up to your butt? Did you have your clothes on?

A: I had a shirt on and some panties.

Q: Where were your panties?

A: That was still on. He pulled them over to the side like he always do.

Q: Could you actually feel his private on that area where you go to the bathroom out of in back?

A: No, because he was trying to put it in there. He asked me if it was in there, and I say yes because I didn't want him in my bottom.

Q: He asked you if it was in there?

A: Yes.

Q: Could you feel it on your skin back there?

A: Yes.

I can understand a child's reluctance to be fully descriptive of the terrible sexual acts that have been done to her. Further, the courts have not required children of tender years to explain what has been done to them using precise medical terms. *See Villalon v.. State,* 791 S.W.2d 130, 134 (Tex.Crim.App.1990); *Wallace v. State,* 52 S.W.3d 231, 235 (Tex.App.—El Paso 2001, no pet. h.). What is required is that sufficient evidence be introduced so that a reasonable jury can determine beyond a reasonable doubt that the crime identified in the indictment and jury charge has been committed.

When this evidence is combined with the medical testimony of the tear in K.W.'s anus, a reasonable jury could have determined beyond a reasonable doubt that

K.W.'s anus was penetrated. Specifically, I would hold that, while not required, medical testimony that the anal opening has been extended to the point that it was torn is legally and factually sufficient to establish penetration, even if the object used was not thrust any further into the rectum. This is analogous to cases involving vaginal penetration where evidence of the slightest penetration is sufficient. *See Luna v. State*, 515 S.W.2d 271, 273 (Tex.Crim.App. 1974). The Court of Criminal Appeals has held:

> [M]ere contact with the outside of an object does not amount to penetration of it. But pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact. Consequently, it is not ungrammatical to describe Appellant's touching of complainant in this case as a penetration,
> . . .

*Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim.App.1992). If the anal opening was expanded to the point of tearing, as the jury could have certainly concluded based upon the evidence, the evidence is factually sufficient to support penetration of the anus.

All the pertinent evidence on these counts has not been recited above, but it is evidence that supports the jury's verdict on these counts. But the majority has failed to explain in their opinion why this evidence, when viewed with all the other evidence, is factually insufficient. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); *Clewis v. State*, 922 S.W.2d 126, 135 (Tex.Crim.App.1996).

### CONCLUSION

I would hold that when weighing all the evidence, including the evidence described herein, the evidence is factually sufficient

to support the charges of aggravated sexual assault of K.W. (Count 3) and indecency with a child (Count 2 paragraph 1). I would affirm the judgment on all counts. Because the majority does not, I respectfully dissent from the reversal on these two counts. I concur in the result on the remainder of the judgment.