NO. 07-01-00153-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JANUARY 10, 2002

______________________________

CARRIE ALESHA JOHNSON,

Appellant

v.

THE STATE OF TEXAS, 

Appellee

_________________________________

FROM THE 263
rd
 
DISTRICT COURT OF HARRIS COUNTY;

NO. 854,807; HON. JIM WALLACE, PRESIDING

_______________________________

Before QUINN, REAVIS and JOHNSON, J.J.

Carrie Alesha Johnson (appellant) was convicted by a jury for the felony offense of aggravated robbery.  Through two points of error, she alleges that 1) the trial court erred in denying her motion to suppress the complainant’s out-of-court identification of her, and 2) the trial court erred in allowing the prosecutor to mention an alleged extraneous offense during the punishment phase.  We affirm. 

Background

On June 21, 2000, Mimi Phan (Mimi), Tu Nguyen (Tu), and Mai Pham (Mai) were employed 
as manicurists at Griggs Nails, a nail salon.  Around 5 or 6 p.m., a woman entered the salon and stole approximately $700 dollars from a basket located at the owner’s work station.  Mimi attempted to thwart the robbery but terminated her efforts when appellant brandished a gun and pointed it at Mimi’s face.  When this occurred, the two were within feet of each other.  Appellant, with money in hand, then exited the salon and met an accomplice who was waiting to drive her away.  

Police investigated the robbery and received a description of the culprit.  According to the officer who testified, Mimi described the person who committed the offense as a black female in her early twenties weighing 125 to 130 pounds.
(footnote: 1)  So too did the officer recall that Mimi indicated that the suspect may have been a customer.  

Several months later, Mimi contacted the police and informed them of the name of the suspect.  The latter was known to various law enforcement officials.  Thereafter, an officer compiled a photo spread containing the picture of appellant and five other black women.  In selecting the pictures to include in the photo array, the officer sought to find other women of about the same race, age, and similar complexion as appellant.  However, because appellant’s hair style was unique, 
i.e.
 it was tinted maroon, he searched for pictures depicting women matching the foregoing characteristics but each with unique hairstyles as well.  And, one of the pictures selected was that of a young black woman with hair tinted orange. 

Upon compiling the array, it was taken to the nail salon for perusal.  Mimi, Mai, and Tu viewed it separately.   Mimi and Mai instantly selected the picture of appellant while Tu did so after reviewing the pictures over a brief period.  Thereafter, appellant was arrested, tried for aggravated robbery with a deadly weapon and convicted of the offense.  

Point One – Unreasonably Suggestive Photo Spread

Appellant initially argues that the trial court erred in overruling her motion to suppress the out-of-court identification of her as the robber.  Suppression was allegedly appropriate because the identification was tainted by an unreasonably suggestive photo spread.  That is, appellant believed the display and identification was tainted because her picture was the only one of a woman with maroon hair.  
We overrule the point. 

Whether the trial court erred in rejecting the claim at bar depends upon whether it abused its discretion.  
Kelly v. State
, 18 S.W.3d 239, 242 (Tex. App.–Amarillo 2000, no pet.)
.  In other words, the appellant must show that the decision fell outside the zone of reasonable disagreement.  
Burden v. State
, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).   At the very least, this would require that she 
not only prove that the photographic display was impermissibly suggestive but also that the procedure utilized created a substantial likelihood of irreparable misidentification.  
Connor v. State
, ___ S.W.3d ___ No. 73,591, 2001 WL 1043248 (Tex. Crim. App. Sept. 12, 2001).

Next, authority holds that it is not essential that the individuals depicted in the photos be identical; "neither due process nor common sense" requires such exactitude.  
Buxton v. State
, 699 S.W.2d 212, 216 (Tex. Crim. App. 1985).  
Consequently, minor variations in appearance do not alone taint the identification procedure utilized when the subjects depicted are reasonably similar to one another. 
Bethune v. State
, 821 S.W.2d 222, 229 (Tex. App.--Houston [14th Dist.] 1991), 
aff’d
, 828 S.W.2d 14 (Tex. Crim. App. 1992). 

Appearing of record at bar is evidence that the officer who compiled the photo array endeavored to select pictures of women who appeared similar to appellant.  Indeed, appellant does not question whether the photos selected depicted women of comparable sex, race, age, and complexion.  She simply believes that because hers was the only one of a woman with maroon hair, the array was unduly suggestive.  

While oddly colored or styled hair arguably may not be a minor variation in physical characteristics, evidence of record indicates that the officer attempted to ameliorate the feature.  He did so by incorporating into the array other women with unique coiffures, including one with orange hair.   And, because those characteristics appeared in one or more of the other pictures, the trial court had evidence upon which it reasonably could have concluded that appellant failed to satisfy the first element in 
Connor
.  That is, it could have reasonably held that the tenor of the array did not somehow manipulate those viewing it to focus upon the picture of appellant since others had funky hair as well.
 

Moreover, that the robbery occurred during the daytime, that the robber stood within very close proximity of Mimi as the two struggled over the money, that the witnesses did not equivocate in their selection of appellant’s picture, and that appellant appeared to be a customer of the salon are indicia dissuading one from concluding that the out-of-court identification irreparably tainted the in-court identification. In other words, evidence appeared of record upon which the trial court reasonably could have found that those who witnessed the robbery could identify appellant irrespective of any previous photo array seen by them.   

In sum, the trial court’s decision to reject appellant’s attempt to exclude the out-of-court identification did not fall outside the zone of reasonable disagreement.  Since it did not, the decision was not an instance of abused discretion.

Point Two – Allusion to an Extraneous Offense

Appellant next contends the trial court erred in allowing the State to continuously mention an alleged extraneous offense during the punishment phase.  The offense in question was an aggravated robbery, and, according to the State, appellant had been adjudicated as engaging in delinquent conduct while a minor due to her commission of the robbery.  The offense in question was only one of several mentioned, however.  The others consisted of burglary, aggravated assault with a deadly weapon, assault and theft.  That she committed the latter four crimes was undisputed.  Indeed, appellant stipulated to their admission into evidence.  Instead, she merely contested reference to the aggravated robbery charge.  We overrule the point.

Whether the trial court erred in permitting the State to allude to the extraneous offense depends upon whether it abused its discretion.  
Wyatt v. State
, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000).  And, if it can be said that the decision falls within the zone of reasonable disagreement, we must hold that it did not abuse its discretion.  
Hughes v. State
, 24 S.W.3d 833, 843 (Tex. Crim. App. 2000), 
cert. denied
, 121 S.Ct. 430 (2000).

Next, it is beyond dispute that a trial court may admit evidence of extraneous offenses during the punishment phase of the trial.  
Tex. Code Crim. Proc. Ann
.
 art. 37.07, §3(a) (Vernon Supp. 2001).  So too may a trial court permit the State to examine witnesses about the defendant’s commission of bad acts or crimes when the defendant calls those witnesses to bolster his request for probation.  
Murphy v. State
, 4 S.W.3d 926, 931 (Tex. App.–Waco 1999, pet. ref’d).   And, to legitimately broach the subject of prior bad acts during cross-examination, the State need only have a good faith basis for asking about the acts.  
Id.
    Finally, offense reports, investigation reports, arrest records, or judgments of conviction may provide such a good faith basis.  
Id.

Here, the appellant sought probation and, in support thereof, called her father to testify on her behalf.  After he testified about how his daughter merited probation, the State examined him about his knowledge of her prior crimes.  This examination included allusion not only to those offenses to which appellant stipulated but also the robbery in question.  Prior to broaching the latter, however, the State informed the trial court that it possessed a judgment revealing that a someone with a name and birth date identical to those of appellant committed the crime.  The possession of such a judgment created a good faith basis for the State to ask appellant’s father about his knowledge of the crime.  
Murphy v. State
, 
supra
.  Thus, allusion to the crime during the punishment phase was not improper.   Nor was it improper to ask the appellant about the crime when she testified on her own behalf during the punishment phase.  Having taken the stand, she placed her credibility and character into issue.  
Norris v. State
, 902 S.W.2d 428, 440 
(Tex. Crim. App. 1995).  And, having done so, the State was entitled to ask whether she committed the offense in question, given that it had a good faith basis to believe that she had.

In sum, the State had good faith basis to raise the matter of the robbery.  Thus, the trial court did not abuse its discretion in admitting the evidence.
(footnote: 2)
Third Point – Instruction Regarding Extraneous Offenses

Finally, appellant contends that the trial court erred in omitting a particular instruction from the punishment charge. The instruction entailed informing the jurors that before they can consider the evidence of extraneous offenses, the State had to prove, beyond reasonable doubt, that appellant had committed them.  We overrule the point.

Assuming 
arguendo
 that error occurred, we find no harm irrespective of the harm standard applied.  This is so for various reasons.  First, as to the aggravated robbery which the State allegedly failed to prove appellant committed, the trial court sustained appellant’s objection to the admission of the judgment depicting same.  The judgment having been excluded, there would be no need for the jury to determine whether the State proved appellant committed the offense.  Second, as to the remaining offenses discussed during the punishment phase, appellant stipulated to their admission into evidence.  In other words, she effectively admitted that she committed them.  She, having admitted to their commission, there was no need for the jury to determine whether the State proved she committed them.  So, excluding the instruction at issue cannot be said to have caused appellant egregious harm.  

Accordingly we affirm the judgment of the trial court.

Brian Quinn

     Justice 

Do Not Publish.

FOOTNOTES
1:
At trial, Mimi stated that she told the investigating officer that the robber was “fatter than me.”

2:
Disposing of the issue as we do, we need not decide if admitting evidence of an appellant’s commission of a fifth crime is harmful when she stipulated to the commission of others just as egregious.