# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00560-CR

**Samuel Jurado, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 61344, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## MEMORANDUM OPINION

A jury convicted Samuel Jurado of the offense of aggravated sexual assault of a child under the age of fourteen, a first-degree felony. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (2)(B) (West Supp. 2007). After Jurado pleaded true to an enhancement allegation, the jury assessed punishment at life imprisonment and a $10,000 fine. In his sole point of error, Jurado asserts that the evidence is factually insufficient to support the conviction because the State failed to prove the element of penetration. We will affirm the judgment.

## BACKGROUND

The jury heard testimony that on July 1, 2006, Jurado was living in a trailer next to the home of his sister, Monica Lara, and that his five-year-old daughter, O.J., lived in the home with the Lara family. O.J. had been temporarily placed with Lara after Child Protective Services removed

O.J. from the care of her mother, based on allegations that O.J.'s mother was abusing drugs. O.J.'s sister, D.J., was also living in the Lara home.

O.J. testified at trial. She stated that while she was living with Lara, Jurado did "nasty stuff" to her in his trailer with "his private." Using two diagrams labeled "girl" and "boy," the State had O.J. identify various parts of the body in order to clarify what "nasty stuff" Jurado had done to her. O.J. explained that a girl's "private" is where she goes "pee," and that the backside of the girl is her "butt." She likewise identified the "private" and the "butt" on the diagram of the boy. O.J. was then asked about the alleged sexual assaults committed by her father, who she referred to as "Sam":

> Q.    If I show you on this diagram—you labeled on the boy, his private, did he do something with his private to you?
>
> A.    Yes.
>
> Q.    Where did he place his private, [O.J.]?
>
> A.    Where I use the restroom.
>
> Q.    He put his private where you go to the restroom?
>
> A.    Uh-huh.
>
> Q.    Did he—did it hurt when he did that?
>
> A.    Yes.
>
> . . .
>
> Q.    Were you scared, [O.J.], when he did that to you?
>
> A.    Yes.

Q. Did he do it just one time or did he do it a lot of times?

A. More than once.

. . .

Q. Did you cry, [O.J.], when he did that to you?

A. Yes.

Q. Did that make him stop when you were crying or did he keep doing it?

A. He kept doing it.

O.J. further testified that Jurado only put his private in her private, not in her "butt," and that all of the incidents took place in Jurado's trailer.

In December of 2006, O.J. was moved to a new temporary placement with Irma Chavez, a friend of O.J.'s mother. After living with Chavez for a week, O.J. made her first outcry. Chavez testified that one day soon after she moved in, O.J. was very upset and crying, and when Chavez asked what was the matter, O.J. responded that "her Ta-Ta Sam had done nasty stuff to her." According to Chavez, O.J. said that Jurado "would put his private in her private," and O.J. later showed Chavez with her hands and with her dolls what Jurado had done to her. The next day, Chavez contacted CPS and O.J. was removed to a new temporary foster placement.

On cross-examination, Chavez was asked over the State's objection whether O.J. had made allegations that she had been abused by someone besides Jurado. Chavez stated that O.J. had told her that in addition to Jurado, O.J.'s cousin had also done nasty stuff to her. After Chavez

3

testified that she did not know whether charges had been filed against O.J.'s cousin, who was a minor, there were no further questions concerning the alleged abuse by O.J.'s cousin.

The jury also heard testimony from Gwen Hudson, a licensed professional counselor who interviewed and met regularly with O.J. following her outcry. She stated that O.J., who Hudson described as being of "above average intelligence," was able to distinguish between the events that took place with her dad, Jurado, and what happened with her cousin, and that O.J. also knows the difference between reality and fantasy.

Aaron Ingram, an investigator with the Bell County's sheriff's department, also testified at trial. Ingram stated that, in the course of his investigation, he took two statements from Jurado that were both admitted into evidence. In the first, Jurado denied having ever touched his daughters, O.J. and D.J., inappropriately. In the second statement, which was read to the jury, Jurado recounted the following:

> Around June 8th of 2006 [I] brought my daughter [O.J.] to my residence in Heidenheimer, Tx. Where I lived with my sister Monica Lara. I immediately noticed that she had weird sexual behaviour. She would get on top of me and dry hump me when we were all on the bed in my room that was setup in the shed. She also wanted to be around me all the time and not let [D.J.] love on me. This would happen every day while [O.J.] lived with me. Around three weeks later around 2:00 am I woke up and found [O.J.] sitting on top of me. She had taken my penis out of my boxer shorts and was dry humping me. I do not think that my penis penetrated her vagina but it is possible that the head or shaft of my penis may have spread her lips on her vagina while she dry humped me.

Jurado did not testify and presented no witnesses. His cross-examination of the State's witnesses suggested that O.J. was confused about whether she had been assaulted by Jurado

4

or her cousin and that she had wrongly attributed acts to Jurado which had actually been committed by her cousin.

The jury found Jurado guilty of aggravated sexual assault of a child under the age of fourteen. After hearing evidence during the punishment phase, the same jury assessed a sentence of life imprisonment and a $10,000 fine. Jurado now appeals, contending that the State failed to adduce factually sufficient evidence on the element of penetration.

## STANDARD OF REVIEW

A factual-sufficiency review requires the appellate court to view all the evidence in a neutral light, favoring neither party. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Watson v. State*, 204 S.W.2d 404, 414 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The verdict may only be set aside if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust or if it is against the great weight and preponderance of the available evidence. *Watson*, 204 S.W.3d at 414-17 (citing *Clewis v. State*, 922 S.W.2d 126, 131-32 (Tex. Crim. App. 1996)); *Johnson*, 23 S.W.3d at 7, 11. Such a wrong and unjust verdict includes instances in which the jury's finding is "manifestly unjust, 'shocks the conscience,' or 'clearly demonstrates bias.'" *Grotti v. State*, No. 134-07, 2008 Tex. Crim. App. LEXIS 761, at *13 (Tex. Crim. App. June 25, 2008) (citing *Watson*, 204 S.W.3d at 426); *see also Clewis*, 922 S.W.2d at 135; *Meraz v. State*, 785 S.W.2d 146, 149 (Tex. Crim. App. 1990). A reversal for factual insufficiency cannot occur when "the greater weight and preponderance of the evidence actually favors conviction." *Roberts*, 220 S.W.3d at 524. The factual sufficiency of the evidence should be measured by the elements of the offense as defined by

a hypothetically correct jury charge. *Wooley v. State*, No. 134-07, 2008 Tex. Crim. App. LEXIS 762, at *21 (Tex. Crim. App. June 25, 2008).

In conducting our factual-sufficiency review, we must be mindful of the deference we give to the jury's original determinations. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The reviewing court may not substitute its judgment for that of the fact finder. *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). A new trial is not warranted simply because the appellate court disagrees with the verdict in the trial court. *Id.* The jury alone determines what weight to place on contradictory testimonial evidence because that determination depends on the jury's evaluation of credibility and demeanor. *Cain*, 958 S.W.2d at 408. The reviewing court may disagree with the jury's result only to prevent a manifest injustice. *Johnson*, 23 S.W.3d at 9; *Cain*, 958 S.W.2d at 407.

## DISCUSSION

Under the penal code, a person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means and the victim is younger than 14 years of age. Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (2)(B) (West Supp. 2007). In cases involving sexual offenses against children, the testimony of the child victim by itself is sufficient to support a conviction of aggravated sexual assault. Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1) (West 2005); *Ozuna v. State*, 199 S.W.3d 601, 606 (Tex. App.—Corpus Christi 2006, no pet.); *Perez v. State*, 113 S.W.3d 819, 837-39 (Tex. App.—Austin 2003, pet. ref'd). Child victims are not expected to testify with the same clarity and ability as is expected of adults. *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990).

6

The unsophisticated testimony of a sexual-assault victim, even a child victim, is sufficient to prove penetration even though her testimony does not track the law word for word. *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978).

On appeal, Jurado argues that "the evidence is factually insufficient as to penetration." He acknowledges the testimony from O.J. that Jurado did not place his private "in her butt," only "in her private," and the fact that the State referred to diagrams to try to explain what O.J. was referring to, but he argues that these references "did not provide any clarity as to what [O.J.]'s private were" [sic]. Thus, Jurado concludes, the jury could not have understood "if penetration occurred."

Evidence of the slightest penetration is sufficient to support a conviction, as long as it has been shown beyond a reasonable doubt. *See Murphy v. State*, 4 S.W.3d 926, 929 (Tex. App.—Waco 1999, pet. ref'd) (citing *Luna v. State*, 515 S.W.2d 271, 273 (Tex. Crim. App. 1974)). In this case, O.J. testified that Jurado placed his private where she uses the restroom. Prior to making that statement, O.J. marked anatomical drawings, indicating the area between the legs on both the "girl" and "boy" diagrams as the "private," which she distinguished from the area she identified as the "butt." O.J. further testified that a girl's "private" is where she goes "pee." A rational inference from O.J.'s testimony is that Jurado penetrated O.J.'s sexual organ. O.J.'s testimony was corroborated by the testimony of outcry witness, Irma Chavez, and O.J.'s counselor, Gwen Hudson. Although O.J.'s trial testimony was by itself sufficient to establish the elements of the offense, Chavez also stated that O.J. told her that Jurado had "put his private in her private," and Hudson testified that O.J. had consistently identified Jurado, rather than O.J.'s cousin, as the perpetrator. We disagree that O.J.'s statements were insufficiently clear, or that her testimony was

7

contradictory on the element of penetration. Regardless, it was within the province of the jury to resolve any conflicts in the evidence and make a determination about the credibility of the witnesses. By its verdict, the jury determined that O.J.'s and Chavez's testimony was credible and resolved any inconsistencies against Jurado.

We hold that any rational trier of fact could have found beyond a reasonable doubt that Jurado committed aggravated sexual assault against O.J. by penetrating her sexual organ. Despite Jurado's contention that O.J. was confused about who had abused her, he points us to no contrary evidence, nor have we found any from our review of the record, that O.J.'s cousin, rather than Jurado, committed the offense.[1] Viewing the evidence in a neutral light, we conclude that the evidence is not so obviously weak or so greatly outweighed by contrary proof that it would not support the finding of guilt beyond a reasonable doubt. Therefore, we overrule Jurado's point of error and affirm the judgment of conviction.

---

[1] Moreover, although Jurado did not testify, he gave a statement to police that was admitted into evidence without objection. In his statement, Jurado describes contact that he says might have occurred between himself and O.J. that qualifies as penetration under Texas law. *See Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992) (holding that slightest penetration of female sexual organ is sufficient to prove penetration even though vagina is not entered); *see also Sherbert v. State*, 531 S.W.2d 636, 637 (Tex. Crim. App. 1976); *Nilsson v. State*, 477 S.W.2d 592, 595 (Tex. Crim. App. 1972). Penetration occurs where the contact is more intrusive than contact with the outer labia. *See Vernon*, 841 S.W.2d at 409. Thus, what Jurado describes as "possibly" having happened between him and O.J. would constitute the charged offense, permitting the jury to reasonably conclude that Jurado knowingly penetrated the sexual organ of O.J., even if it were to believe Jurado's assertion that he did not do so intentionally because the sexual contact was initiated by O.J.

## CONCLUSION

Because the evidence is factually sufficient to support the verdict, we affirm the judgment of conviction.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   August 14, 2008

Do Not Publish

9