IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00256-CV

 

Texas State Technical College,

                                                                                    Appellant

 v.

 

John Donald Evans,

                                                                                    Appellee

 

 

 



From the 170th District
Court

McLennan County, Texas

Trial Court No. 2006-4342-4

 



MEMORANDUM  Opinion



 








            John Donald Evans sued Texas State Technical College for injuries sustained when he tripped on protective
matting on the floor of TSTC’s gymnasium.  The trial court denied TSTC’s plea
to the jurisdiction and motion to dismiss.  TSTC challenges the denial of its
plea on grounds that: (1) Evans failed to provide notice of his claims; (2)
there was no unreasonably dangerous condition regarding the mat, Evans knew
about the condition, and TSTC did not have actual knowledge of the condition;
and (3) Evans’s claims are based on discretionary acts.  We reverse and render.

STANDARD OF REVIEW

            A plea to the jurisdiction
challenges the trial court’s “power to determine the subject matter of the
suit.”  Vela
v. Waco Indep. Sch. Dist., 69 S.W.3d 695, 698 (Tex. App.—Waco 2002, pet. withdrawn).  We review a plea “based on
sovereign immunity de novo
because the question of whether a court has subject matter jurisdiction is
a matter of law.”  Hoff
v. Nueces County,
153 S.W.3d 45, 48 (Tex. 2004); see Vela, 69 S.W.3d at 698.  Where “the pleading
requirement has been met and evidence has been submitted to support
the plea that implicates the merits of the case, we take as true all
evidence favorable to the nonmovant.”  Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 228
(Tex. 2004) (citing Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997)).  “We indulge every
reasonable inference and resolve any doubts in the nonmovant’s favor.”  Id.

NOTICE OF CLAIMS 

            In its
first issue, TSTC contends that Evans failed to provide notice of his claims
within six months of the accident.

The Tort Claims Act requires a claimant
to provide notice to the governmental unit no later than six months after the
incident giving rise to the claim.  Tex. Civ. Prac. & Rem. Code Ann. § 101.101(a) (Vernon 2005).  Formal
notice must reasonably describe the
damage or injury claimed, the time and place of the incident, and the incident.
 Id. at §
101.101(a)(1)-(3).  Formal notice is not required where the governmental unit has actual notice of
an injury.  See Tex. Civ. Prac. & Rem. Code Ann. § 101.101(c).  Because Evans filed suit
after September 1, 2005, the notice requirement is jurisdictional.  See Tex. Gov’t Code Ann. § 311.034 (Vernon Supp. 2008).

 Statutory Notice

Evans contends that he provided notice
by sending an email to Harold Fischer, a member of TSTC’s drafting department,
only six days after the accident:

I had failed to pass on that Saturday, I
tripped on the blue matting in the gym.  There was no tape over the seam. 
Someone might be interested in knowing that so someone else does not get hurt
like I did. [E]specially if they are an old guy like me.         

 

Citing University of Texas Southwestern Medical Center. v. Loutzenhiser, 140 S.W.3d 351 (Tex. 2004) and Casanover
v. Tomball Regional Hospital Authority, No. 01-04-00136-CV, 2006
 Tex. App. LEXIS 108 (Tex. App.—Houston [1st Dist.] Jan. 5, 2006, no pet.)
(mem. op.), TSTC contends that this email fails to either notify it of the
claims against it or reasonably describe the claimed injury.

In Loutzenhiser, parents of a
child born with birth defects sued the Medical Center.  See Loutzenhiser,
140 S.W.3d at 354, 356.  The child’s father had contacted the Medical Center via telephone:

I called after he was born to inform
them that he had -- the situation with his hand -- he had no fingers, thinking
that they would want to be made aware of that.  The reason that I thought they
may want to be made aware of that is because I thought it would be relevant to
them, and that I had read in June or July a Newsweek article that said
that CVS possibly causes limb reduction -- is, I believe, the term that it
used.  And since it happened to my son, I thought that they would want to know
about it. . . . And at that time I was told that it didn’t have anything to do
with the test, and they didn’t act interested in finding out about it.  And I
said, “Would you like some information for your records?”, and they never
followed up on it.

 

Id. at 357.  The Texas Supreme Court held
that this conversation merely advised the Medical Center that Loutzenhiser had
a CVS procedure and the child was born with a limb reduction.  See id. 
It neither informed the Medical Center that it had performed the procedure nor
gave notice of the time or claim.  Id. at 357-58.  The father merely
thought “they would want to be made aware” of the deformity “for [their]
records.”  Id. at 358.[1]
  

            In Casanover, the
Hospital was sued for damages arising out of Rosa Lee Evans’s death.  See
Casanover, 2006 Tex. App. LEXIS 108, at *1. 
Counsel wrote two letters informing the Hospital that he represented Casanover for “‘injuries
sustained’ by [] Evans on or about March 23, 2001.”  Id. at *7-8.  The
first letter requested medical records and the second requested billing
records.  See id. at *8.  The Fourteenth Court held that the letters
failed to reasonably describe the injury claimed, indicate that Evans had died,
mention an incident, or indicate the Hospital’s responsibility for the injury. 
 Id. at *9.  They “merely refer[ed] to ‘injuries sustained on the
referenced date.’”  Id.

Like the telephone call in Loutzenhiser
and the letters in Casanover, Evans’s email is inadequate notice
under section 101.101(a).  Stating that he was “hurt” does not reasonably
describe the damage or injury claimed and does not indicate that TSTC might be
at fault.  See Loutzenhiser, 140 S.W.3d at 357-58; see also Casanover,
2006 Tex. App. LEXIS 108, at *9; Tex. Dep’t of Crim. Justice v. Thomas,
263 S.W.3d 212, 218 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (Letter
alleging that inmate died of asphyxiation and requesting records, reports, and
video tapes was “merely a request for additional information,” not notice of a
claim against TDCJ, and failed to describe the incident).  Evans
merely thought “[s]omeone
might be interested in knowing.”  See Loutzenhiser,
140 S.W.3d at 358; see also Casanover, 2006 Tex. App. LEXIS
108, at *9.  Accordingly, TSTC received no statutory notice of Evans’s
injury.

Actual Notice

            [A]ctual notice to a governmental unit
requires knowledge of (1) a death, injury, or property damage; (2) the
governmental unit’s alleged fault producing or contributing to the death,
injury, or property damage; and (3) the identity of the parties involved.  Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995).  “Alleged fault” includes the governmental
unit’s “subjective awareness of its fault, as ultimately alleged by the
claimant, in producing or contributing to the claimed injury:”

It is not enough that a governmental
unit should have investigated an incident as a prudent person would have, or
that it did investigate, perhaps as part of routine safety procedures, or that
it should have known from the investigation it conducted that it might have
been at fault.  If a governmental unit is not subjectively aware of its
fault, it does not have the same incentive to gather information that the
statute is designed to provide, even when it would not be unreasonable to
believe that the governmental unit was at fault.

 

Tex. Dep’t of Crim. Justice v. Simons, 140 S.W.3d 338, 347-48 (Tex. 2004).[2]

            Citing Texas Department of
Transportation v. Anderson, No.
12-07-00268-CV, 2008 Tex. App. LEXIS 449 (Tex. App.—Tyler Jan. 23, 2008, no pet.) (mem. op.)., TSTC
contends that it did not have subjective
awareness of its alleged fault. 
In Anderson, TxDOT was sued regarding
a traffic accident that was allegedly caused by a defect in the roadway.  See
Anderson, 2008 Tex. App. LEXIS 449, at *1-2.  C. L. Hollis, the TxDOT officer who investigated
the accident, informed other employees that the accident resulted in injuries
and one fatality, the date and location of the accident, and the victims’
identities.  Id. at *2-3.  He opined that the accident was caused by the
road’s faulty condition.  Id.  He previously worked other accidents in
that location and had warned TxDOT of the problem.  Id.  The Tyler Court found that “TxDOT’s knowledge of Hollis’s opinion, without more, does not show
subjective awareness of fault.”  Id. at *11.  The “matter never reached
the stage of TxDOT’s assessing its fault.”  Id.  “Without assessment of
its fault, TxDOT cannot be said to have had subjective awareness of its fault
for this accident.”  Id.  Similarly, the letters in Casanover
and the telephone call
in Loutzenhiser were insufficient to inform the
respective governmental unit that its “fault allegedly produced or contributed
to the claimed injury.”  Casanover, 2006 Tex. App. LEXIS 108, at *12-13; see Loutzenhiser, 140 S.W.3d at 358.

In his deposition, Evans testified that
he was unaware that any TSTC employees were in the area when the accident
occurred.  Other than his email to Fischer, he did not communicate with any
TSTC employees about the accident.  Yet,
the record does not even suggest that Fischer was an “individual charged with reporting or investigating
claims.”  Tex.
Dep’t of Crim. Justice v. Simons, 197 S.W.3d 904, 911 (Tex. App.—Beaumont
2006, no pet.) (record did not contain evidence that “warden was an individual charged with
reporting or investigating claims.”).  Rather, the affidavit of TSTC chief of safety Rhett Reddell establishes that he was the official
charged with being notified of the accident, but was not notified, and that
TSTC was not aware of any previous accidents involving the mats.  The record
contains no other evidence addressing actual notice. 

As in Loutzenhiser,
Casanover, and Anderson, Evans’s email is insufficient to convey the
message to TSTC that its
alleged fault produced or contributed to Evans’s injury.  See Loutzenhiser, 140 S.W.3d
at 358; see also Casanover, 2006 Tex. App. LEXIS 108, at *12-13; Anderson,
2008 Tex. App. LEXIS 449, at *11; Thomas, 263 S.W.3d at 218 (Actual notice not shown even though TDCJ
investigated the matter and where no evidence indicated “whether, how, or why
any TDCJ employee was reprimanded in connection with Hollimon’s death.”).  The evidence does not demonstrate
actual notice as contemplated by section 101.101(c).  See Simons, 140
S.W.3d at 347; see also Loutzenhiser, 140 S.W.3d at 358; Casanover,
2006 Tex. App. LEXIS 108, at *12-13;
Anderson, 2008 Tex. App. LEXIS 449, at *8-11;
Thomas, 263 S.W.3d at 218.  We sustain TSTC’s first issue and need not address its remaining
issues.  See Tex. R. App. P.
47.1.

The trial court’s judgment is reversed and judgment is
rendered dismissing Evans’s claims for want of jurisdiction.

 

 
            FELIPE REYNA

Justice

 

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

Reversed and
rendered 

Opinion
delivered and filed March 18, 2009

[CV06]   









[1]               Loutzenhiser’s holding that the notice requirement is not jurisdictional has
been superseded by section 311.034 of the Government Code.  Univ. of Tex. Southwestern Med. Ctr. v.
Loutzenhiser, 140
S.W.3d 351, 364 (Tex. 2004); Tex.
Gov’t Code Ann. §
311.034 (Vernon Supp. 2008).





[2]
              Like Loutzenhiser, Simons also held that the notice requirement
is not jurisdictional, a holding which has been superseded.  Tex. Dep’t of Crim. Justice v. Simons, 140 S.W.3d 338, 349 (Tex. 2004); Tex.
Gov’t Code Ann. §
311.034 (Vernon Supp. 2008).

 








yle="font-variant: small-caps">Impeachment of the State’s Character Witnesses

      In his first issue, Moore contends that the trial court erred in sustaining the State’s
objection to Moore’s attempted cross-examination of the State’s character witnesses. To the
extent that Moore preserves his complaint on appeal, the trial court’s error was harmless.
      In rebuttal, the State called three character witnesses who testified that in their opinion
Hauerland had a good reputation for truthfulness: Joe Russell, a Venus ISD school board
member; Delinda Cervantez, a Venus ISD employee; and Brian Blackwell, a Venus ISD
middle-school principal. For each of these witnesses, Moore made an offer of proof of the
evidence that he sought to introduce through the witness in question-and-answer form. See
Tex. R. Evid. 103(a)(2). Russell testified outside the presence of the jury that he was aware
that Hauerland had committed one shoplifting offense; Blackwell testified that he was aware
that Hauerland had twice been convicted of theft; and Cervantez testified that she had heard
that Hauerland had twice been convicted of theft. As to Russell, the State objected generally to
improper impeachment. As to all of these witnesses, the State objected that the danger of
unfair prejudice of evidence of these convictions substantially outweighed their probative value
for impeachment. See Tex. R. Evid. 403. The trial court sustained the objections. 
      Moore preserved his complaint at trial as to each witness, by making an offer of proof of
the excluded evidence. See Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(2); Warner v.
State, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998) (per curiam); see also Alonzo v. State, 67
S.W.3d 346, 355 (Tex. App.—Waco 2001, pet. granted on other grounds).
      However, Moore forfeits his complaint in part on appeal. An appellant who presents an
issue on appeal other than that presented in the trial court forfeits the issue on appeal. Tex. R.
App. P. 33.1; Turner v. State, 87 S.W.3d 111, 117 (Tex. Crim. App. 2002), cert. denied, 123
S. Ct. 1760, 155 L. Ed. 2d 519 (2003); Montoya v. State, 43 S.W.3d 568, 571 (Tex.
App.—Waco 2001, no pet.). The trial court ruled that Moore’s attempted means of
impeachment was improper only as to Russell. As to Cervantez and Blackwell, the court ruled
only that the danger of unfair prejudice of evidence of Hauerland’s shoplifting citations
substantially outweighed the evidence’s impeachment value. Moore does not argue that the
court erred in its Rule 403 analysis. Thus, the only ruling of the trial court of which Moore
complains on appeal that comports with his trial objection is that the impeachment of Russell as
to his knowledge of Moore’s shoplifting citations was by an improper means.
      In this regard, the trial court erred. A character witness is subject to proper cross-examination on the basis of the witness’s knowledge of the character of the person about whom
the witness is testifying. Any witness is subject to impeachment. Tex. R. Evid. 607. One
means of impeachment is to undermine the basis of the witness’s knowledge of the subject of
the testimony. A character witness, thus, who testifies to a person’s good character, is subject
to cross-examination on specific instances of conduct by the person that would be inconsistent
with a good character. Tex. R. Evid. 405(a); Wilson v. State, 71 S.W.3d 346, 350 (Tex.
Crim. App. 2002); Murphy v. State, 4 S.W.3d 926, 930 (Tex. App.—Waco 1999, pet. ref’d). 
In general, a witness who testifies as to his or her opinion of a person’s character is subject to
cross-examination by questions of the form “do you know”; that is, questions asking whether
the character witness’s knowledge of the person’s character includes knowledge of specific bad
acts committed by the person. Wilson at 350; see Murphy at 932.
      There are at least two limitations on the impeachment of an opinion character witness by
specific instances of conduct. “First, the incidents inquired about must be relevant to the
character traits at issue. Second, the alleged bad act must have a basis in fact.” Wilson at 351-52 (internal citation omitted); accord Murphy at 930-31.
      Moore properly sought to impeach Russell with his knowledge of Hauerland’s theft
convictions in accordance with the Rules of Evidence. Hauerland’s bad acts that Moore
wanted to use to impeach Russell’s knowledge of Hauerland’s character had a basis in fact,
since Hauerland admitted to the theft convictions. Those convictions were relevant to
Hauerland’s character for truthfulness; theft is among the most damning crimes of deception. 
Thus, the trial court erred in sustaining the State’s objection to improper impeachment.
      The error, however, is harmless. Improper limitations on cross-examination violate the
confrontation clauses of the United States and Texas Constitutions, and thus implicate the
constitutional standard for harmless error review. See U.S. Const. amend. VI; Tex. Const.
art. I, § 10; Tex. R. App. P. 44.2(a); Lopez v. State, 18 S.W.3d 220, 222 (Tex. Crim. App.
2000). Under that standard, if a court of appeals finds “constitutional error that is subject to
harmless error review, the court of appeals must reverse a judgment of conviction . . . unless
the court determines beyond a reasonable doubt that the error did not contribute to the
conviction.” Tex. R. App. P. 44.2(a). A confrontation clause violation is subject to harmless
error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438, 89
L. Ed. 2d 674 (1986); Young v. State, 891 S.W.2d 945, 948 (Tex. Crim. App. 1994); see
Shilling v. State, 60 S.W.3d 280, 283 (Tex. App.—Waco 2001, pet. ref’d).
     In analyzing harm from the erroneous exclusion of defense cross-examination of a State’s
witness, a court begins with the assumption that “the damaging potential of the cross
examination w[as] fully realized.” Van Arsdall, 475 U.S. at 684, 106 S. Ct. at 1438; Young at
948. The court then considers the following factors:
(1) the importance of the witness’s testimony in the prosecution's case,

(2) whether the testimony was cumulative,

(3) the presence or absence of evidence corroborating or contradicting the testimony
of the witness on material points,

(4) the extent of cross-examination otherwise permitted, and

(5) the overall strength of the prosecution’s case.

Id. Under this assumption and in light of these factors, the court must determine whether the
error was harmless beyond a reasonable doubt. Id.; Tex. R. App. P. 44.2(a).
     Thus, we assume that, had Russell testified before the jury as he had outside its presence,
he would have testified that he knew about one of Hauerland’s shoplifting citations and did not
know about the other. However, three defense witnesses testified that Hauerland had a poor
character for truthfulness, and Moore further impeached Hauerland with a prior inconsistent
statement. Two witnesses other than Russell testified as to Hauerland’s good character for
truthfulness. Moreover, Hauerland’s testimony regarding the elements of the offense was
corroborated by several other witnesses, and was contradicted only by Moore’s bald denials. 
The trial court otherwise generally allowed free cross-examination. Lastly, the overall
strength of the State’s well-corroborated evidence was overwhelming. In light of these factors,
the trial court’s error in excluding the evidence was harmless beyond a reasonable doubt. I
would overrule Moore’s first issue.Limitation of Moore’s Character Witnesses
     In his second issue, Moore contends that the trial court erred in sustaining the State’s
objections to Moore’s offer of evidence of his good character for being truthful, and his offer
of opinion evidence of his good character for being peaceful and law-abiding. If the trial court
erred, the error was harmless.
     Before Moore’s attorney began to present his case, he informed the court that he intended
to call character witnesses for Moore’s good character for being peaceful, law-abiding, and
truthful. The State objected that Moore’s character for peacefulness was not at issue, and that
Moore’s credibility had not yet been impeached. The court limited the testimony of Moore’s
character witnesses to reputation evidence of Moore’s character. 
     Moore called his pastor, who testified on direct examination that Moore’s reputation for
being peaceful and law-abiding was good. Moore testified in his main case, and the State
cross-examined him. Thereafter, Moore’s attorney again offered evidence of Moore’s
character for truthfulness. The State objected that this was improper bolstering. The trial
court again limited the evidence to reputation evidence of Moore’s character for being peaceful
and law-abiding.
     Thereafter, Moore called a friend, who testified that Moore’s reputation for being peaceful
and law-abiding was good.
     Moore preserved his complaints at trial, since the substance of the testimony that he sought
to offer was apparent from the context. Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(2).
Evidence of Truthful Character
     The Texas Rules of Evidence provide for the impeachment and rehabilitation of a witness’s
credibility:
     The credibility of a witness may be attacked or supported by evidence in the form
of opinion or reputation, but subject to these limitations:
     (1) the evidence may refer only to character for truthfulness or
untruthfulness; and
     (2) evidence of truthful character is admissible only after the character of the
witness for truthfulness has been attacked by opinion or reputation evidence or
otherwise.

Tex. R. Evid. 608(a).
     Moore argues that the State’s cross-examination of him impeached his credibility by
attacking his character for truthfulness. “Vigorous cross-examination” can, in principle,
effectively impeach a witness’s credibility. See Duckett v. State, 797 S.W.2d 906, 918-19
(Tex. Crim. App. 1990), overruled on other grounds, Cohn v. State, 849 S.W.2d 817, 819
(Tex. Crim. App. 1993). However, before character evidence of truthfulness is admissible to
rehabilitate an impeached witness’s credibility, the method of impeachment must have attacked
the witness’s character for truthfulness, not just the witness’s testimony. 1 Steven Goode et
al., Texas Practice: Guide to the Texas Rules of Evidence § 608.2 (3d ed. 2002). 
Reputation or opinion testimony as to the witness’s character for untruthfulness impeaches the
witness for purposes of Rule 608(a); merely contradicting the witness’s testimony by cross-examination or otherwise generally does not. Stitt v. State, 102 S.W.3d 845, 848 (Tex.
App.—Texarkana 2003, pet. ref’d); Spector v. State, 746 S.W.2d 946, 951 (Tex.
App.—Austin 1988, pet. ref’d).
     The cross-examination of Moore was unexceptional, and not particularly vigorous. 
Moreover, while the State pointed out contradictions within Moore’s testimony and between
Moore’s testimony and that of other witnesses, the State did not directly attack Moore’s
character for truthfulness. Thus, the trial court did not abuse its discretion in excluding
evidence of Moore’s character for truthfulness.
Opinion Evidence of Peaceful and Law-Abiding Character
     If the trial court erred in excluding opinion evidence of Moore’s character for being
peaceful and law-abiding, the error was harmless. 
     The Rules of Evidence provide for an exception to the general prohibition against character
conformity evidence for “[e]vidence of a pertinent character trait offered . . . by an accused in
a criminal case, or by the prosecution to rebut the same.” Tex. R. Evid. 404(a)(1). In a
prosecution for a crime of violence, the defendant’s character for being peaceful is pertinent,
since evidence of peaceful character makes it less likely that the defendant committed the
crime. For example, “[i]n a murder case, the accused’s reputation for peacefulness, or non-aggressive behavior, is the appropriate inquiry.” Wheeler v. State, 67 S.W.3d 879, 882 n.2
(Tex. Crim. App. 2002) (quoting Valdez v. State, 2 S.W.3d 518, 520 (Tex. App.—Houston
[14th Dist.] 1999, pet. ref’d)).
     The Rules of Evidence also generally provide that when character evidence is admissible, it
may only be proved on direct examination “by testimony as to reputation or by testimony in
the form of an opinion.” Tex. R. Evid. 405(a). Under the Rules, moreover, the rigid
common-law distinction between opinion and reputation evidence has been relaxed. See
Murphy v. State, 4 S.W.3d 926, 932-33 (Tex. App.—Waco 1999, pet. ref’d); 1 Goode,
Guide to the Texas Rules of Evidence § 405.2.2, at 266-67.
     Although the trial court did not permit Moore to present opinion evidence of his character
for being peaceful and law-abiding, the court did permit reputation evidence. Moore does not
suggest how opinion evidence would have been preferable to reputation evidence, and we do
not see how it would be. Indeed, even under the common law, opinion evidence was
considered inferior to reputation evidence. 1 Goode § 405.2.2. Thus, Moore’s “substantial
rights” were not affected by the limitation of evidence of Moore’s peaceful character to
reputation evidence. See Tex. R. App. P. 44.2(b).
     I would overrule Moore’s second issue.
Impeachment of Hauerland by Prior ConvictionsIn his third issue, Moore contends that the trial court erred in sustaining the State’s
objection to the impeachment of Hauerland by evidence of prior convictions. The trial court
did not abuse its discretion in sustaining the objection to evidence of remote convictions.
     Before Hauerland testified on direct examination, Moore laid the predicate for impeaching
Hauerland by evidence of his prior convictions for theft. See Tex. Penal Code Ann.
§ 31.03(a) (Vernon 2003). On cross-examination by Moore outside the presence of the jury,
Hauerland testified that he had been arrested for shoplifting in 1987 and 1988, and had been
issued a citation and paid a fine in municipal court in each case. Hauerland testified that he
had not been convicted of a crime since. The trial court overruled Moore’s request to cross-examine Hauerland with the remote convictions in the jury’s presence. Thus, Moore preserved
his complaint for review. See Tex. R. App. P. 33.1(a).
     The Texas Rules of Evidence generally provide for the impeachment of a witness by
evidence of the witness’s prior convictions:
     For the purpose of attacking the credibility of a witness, evidence that the witness
has been convicted of a crime shall be admitted if elicited from the witness or
established by public record but only if the crime was a felony or involved moral
turpitude, regardless of punishment . . . .

Tex. R. Evid. 609(a). The general rule is that such convictions within the ten years prior to
the witness’s testimony are admissible only if the trial “court determines that the probative
value of admitting this evidence outweighs its prejudicial effect to a party.” Id. For “remote”
convictions more than ten years old, however, a more stringent standard applies:
     Evidence of a conviction under this rule is not admissible if a period of more than
ten years has elapsed since the date of the conviction or of the release of the witness
from the confinement imposed for that conviction, whichever is the later date, unless
the court determines, in the interests of justice, that the probative value of the
conviction supported by specific facts and circumstances substantially outweighs its
prejudicial effect.

Tex. R. Evid. 609(b). The balancing of the probative value and prejudicial effect of evidence
of a witness’s prior convictions usually arises where the witness is the defendant. In those
cases, in weighing the probative value and prejudicial effect of evidence of convictions, the
trial court should consider several factors: 

(1) the impeachment value of the prior crime,

(2) the temporal proximity of the past crime and the witness’s subsequent criminal
history,

(3) the similarity between the past crime and the offense being prosecuted,

(4) the importance of the witness’s testimony, and

(5) the importance of the credibility issue.

Theus v. State, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992); White v. State, 21 S.W.3d 642,
646 (Tex. App.—Waco 2000, pet. ref’d). The impeachment value of crimes of deception is
high, and their prejudicial effect is lower than that of crimes of violence. Theus at 880; White
at 647. The passage of time between the witness’s last conviction and the time of the witness’s
testimony tends to reduce the conviction’s probative value. Id. The similarity of the prior
conviction and the charged offense is not applicable where, as here, the witness does not stand
charged with an offense. Lastly, the importance of the witness’s testimony, and thus the
importance of the witness’s credibility, decrease with the corroboration of the testimony by
other evidence; and so decreases the probative value of evidence of the witness’s convictions. 
Id. 
     In ruling on the admissibility of prior convictions for impeachment, the trial court has
“wide discretion.” Theus at 881; White at 646. Thus, an appellate court may reverse such a
ruling only for a “clear abuse of discretion.” Theus at 881. The trial court abuses its
discretion in ruling on the admissibility of such evidence only if the ruling lies “outside the
zone of reasonable disagreement.” Id.; White at 646. 
     Theft is a crime of moral turpitude. Bowden v. State, 628 S.W.2d 782, 788 (Tex. Crim.
App. 1982); Jackson v. State, 50 S.W.3d 579, 592 (Tex. App.—Fort Worth 2001, pets. ref’d).
     The trial court did not err in excluding evidence of Hauerland’s remote theft convictions. 
The dates of Hauerland’s convictions are not in the record, but the parties do not dispute that
the convictions were remote. In themselves, Hauerland’s two citations for petty theft some
thirteen or fourteen years before trial, without any intervening convictions, have little bearing
on Hauerland’s present credibility. Moreover, at least five other witnesses testified to Moore’s
threats against Hauerland. Thus, the trial court did not abuse its discretion in finding that the
probative value of the convictions did not outweigh the danger of unfair prejudice. I would
overrule Moore’s third issue.
Motion to Quash the Indictment

     In his fourth issue, Moore contends that the trial court erred in overruling Moore’s motion
to quash the indictment. Moore forfeits his issue on appeal.
     Prior to trial, Moore filed a motion to quash the indictment on the grounds that:
     It is alleged in COUNT TWO of the Indictment that the defendant did threaten to
harm another, to-wit: J. Haverland, a public servant, “by an unlawful act . . . [.]” 
Said COUNT TWO fails to allege[] any manner and means by which the Defendant
committed an “unlawful act.” 

On the day of trial, Moore presented the motion to the trial court, and argued, “there’s no act
alleged and I was just asking for the manner and means of the unlawful act, that it be stated
with specificity to give us notice of what we’re accused of.” The trial court overruled the
motion. Moore thus preserved the complaint at trial. See Tex. R. App. P. 33.1(a).
     But Moore forfeits his complaint on appeal. Moore’s issue presented on appeal does not
comport with his trial complaint. An appellant who presents an issue on appeal other than that
presented in the trial court forfeits the issue on appeal. See Tex. R. App. P. 33.1; Turner, 87
S.W.3d at 117; Montoya, 43 S.W.3d at 571.
     At trial, Moore complained of the indictment’s notice of the manner and means of the
unlawful act that he threatened to commit against Hauerland. On appeal, relying on Doyle v.
State, Moore complains of the indictment’s notice of the manner and means by which he
communicated the threat to Hauerland. See Doyle v. State, 661 S.W.2d 726, 729 (Tex. Crim.
App. 1983) (per curiam). On appeal, Moore argues, “Prior to the commencement of trial,
Appellant was entitled to know the specific unlawful act that constituted the threat. Was the
act verbal, i.e., a statement made by Appellant, or was the act some physical conduct on the
part of the Appellant, perceived as a threat by the complainant?” This issue on appeal does not
comport with Moore’s complaint at trial. Thus, I would overrule Moore’s fourth issue.
Jury Instructions

     In his fifth issue, Moore contends that the trial court erred in overruling Moore’s requested
jury instructions on the duty to report child abuse and the confidentiality of counseling records. 
In his eighth issue, he argues that the trial court erred in overruling his requested instruction on
simple assault as a lesser included offense. The court did not err.
     The Texas Code of Criminal Procedure requires that the trial court instruct the jury on the
“law applicable to the case.” Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2004). 
Defensive Instructions
     Moore requested two special charges in writing prior to the submission of the charge to the
jury. His requested instruction on the duty to report suspected child abuse or neglect generally
tracked the language of Texas Family Code Sections 261.101, 261.103, and 261.105. See
Tex. Fam. Code Ann. §§ 261.101(a)-(b), 261.103(a), 261.105(a) (Vernon 2002). His
requested instruction on the confidentiality of investigations of suspected child abuse loosely
tracked the language of Family Code Section 261.201. See id. § 261.201(a) (Vernon 2002). 
The trial court overruled Moore’s requests. Thus, Moore preserved these complaints at trial. 
See Tex. R. App. P. 33.1(a).
     At trial and on appeal, Moore argues that Hauerland was not acting as a public servant, as
required for retaliation, at the time of the incident, since Hauerland’s withholding of the check
was contrary to those Family Code sections. The trial court was not required to give those
defensive instructions.
     “[A] defensive instruction is not required when the issue in question is not a statutorily-enumerated defense and merely serves to negate elements of the State’s case.” Ortiz v. State,
93 S.W.3d 79, 92 (Tex. Crim. App. 2002), cert. denied, 123 S. Ct. 1901, 155 L. Ed. 2d 824
(2003); accord Giesberg v. State, 984 S.W.2d 245, 248-51 (Tex. Crim. App. 1998). Moore’s
requested instructions on the duty to report suspected child abuse and on the confidentiality of
investigations of suspected child abuse do not implicate statutory defenses or affirmative
defenses. Those instructions would only serve, if they are of any effect, to negate the “public
servant” element of the offense of retaliation. Thus, the trial court did not err in refusing the
instructions. I would overrule Moore’s fifth issue.
Lesser-Included-Offense Instruction
     Before the submission of the charge to the jury, Moore requested in writing an instruction
on simple assault by threat as a lesser included offense of retaliation. See Tex. Penal Code
Ann. § 22.01(a)(2). The trial court denied the request. Thus, Moore preserved this complaint
at trial. See Tex. R. App. P. 33.1(a).
     The analysis of whether an instruction on a lesser included offense is required has two
steps. Feldman v. State, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002); Aguilar v. State, 682
S.W.2d 556, 558 (Tex. Crim. App. 1985). First, the court must “decide whether the offense
is actually a lesser-included offense of the offense charged” under Texas Code of Criminal
Procedure Article 37.09. Feldman at 750; see Arevalo v. State, 943 S.W.2d 887, 889 (Tex.
Crim. App. 1997); Rousseau v. State, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993); Tex.
Code Crim. Proc. Ann. art. 37.09 (Vernon 1981). Next, the court must determine whether
“the record contains some evidence that would permit a rational jury to find that the defendant
is guilty only of the lesser offense,” that is, guilty of the lesser offense and not guilty of the
charged offense. Feldman at 750; accord Rousseau at 672. Only if some affirmative evidence
so establishes the lesser included offense as a “valid rational alternative” to the charged offense
is an instruction on the lesser included offense required. Feldman at 750; Wesbrook v. State,
29 S.W.3d 103, 113-14 (Tex. Crim. App. 2000).
     Moore argues, under Code of Criminal Procedure Article 37.09(2), that assault by threat is
a lesser included offense of retaliation by threat. Article 37.09(2) provides that:
     An offense is a lesser included offense if:
     . . .
     (2) it differs from the offense charged only in respect that a less serious
injury or risk of injury to the same person, property, or public interest suffices to
establish its commission . . . .

Tex. Code Crim. Proc. Ann. art. 37.09. Moore argues that assault by threat, without the
allegation of a public servant victim, is a less serious injury to the same victim than retaliation
by threat against a public servant.
     The elements of retaliation are that:
     A person commits an offense if he intentionally or knowingly harms or threatens
to harm another by an unlawful act:
     (1) in retaliation for or on account of the service or status of another as a:
            (A) public servant, witness, prospective witness, or informant; or
            (B) person who has reported or who the actor knows intends to report the
occurrence of a crime . . . .
Tex. Penal Code Ann. § 36.06(a). The indictment alleges that Moore intentionally or
knowingly threatened to harm Hauerland by an unlawful act in retaliation for or on account of
the services or status of Hauerland as a public servant. The indictment also pleaded that
Hauerland’s services or status as a public servant was as Venus ISD superintendent, and that
the unlawful act was to harm Hauerland.
     The elements of assault by threat are that:
     A person commits an offense if the person:
     . . .
     (2) intentionally or knowingly threatens another with imminent bodily injury,
including the person’s spouse . . . .

Tex. Penal Code Ann. § 22.01(a)(2).
     The presence or absence of a victim’s service or status as a public servant does not render
the injury to the victim more or less serious for purposes of Article 37.09. More serious and
less serious injuries are usually distinguished, for purposes of determining lesser included
offenses, as between the less serious, bodily injury and the more serious, serious bodily injury. 
See Hall v. State, 81 S.W.3d 927, 931 (Tex. App.—Dallas 2002, pet. granted in part); Tex.
Penal Code Ann. § 1.07(a)(8), (46) (Vernon 2003). Thus, the trial court did not err in
denying Moore’s requested lesser included instruction. I would overrule Moore’s eighth issue.
Election

     In his seventh issue, Moore contends that the trial court erred in overruling his request that
the State elect between the two counts of the indictment. Moore argues that the court should
have required the State to elect to proceed under the more specific of two offenses in pari
materia. The trial court did not err in overruling Moore’s request.
     Moore was indicted for one count of assault on a public servant by threat and for one count
of retaliation against a public servant by threat. Prior to trial, Moore filed a motion to require
the State to elect to proceed on only one count, on the grounds that both counts “allege the two
different manners and means of committing the same statutory offense” of assault. Moore did
not argue on which count the State must proceed. The trial court overruled the motion.
     On appeal, Moore argues that assault on a public servant and retaliation against a public
servant are in pari materia. Statutes are in pari materia when they “deal with the same
general subject, have the same general purpose, or relate to the same person or thing or class
of persons or things.” Huynh v. State, 901 S.W.2d 480, 483 (Tex. Crim. App. 1995) (quoting
Cheney v. State, 755 S.W.2d 123, 126 (Tex. Crim. App. 1988)); Alejos v. State, 555 S.W.2d
444, 449-50 (Tex. Crim. App. 1977) (op. on reh’g). “Similarity of purpose or object is the
most important factor in assessing whether two provisions are in pari materia.” Burke v.
State, 28 S.W.3d 545, 547 (Tex. Crim. App. 2000). Statutes may conflict “[w]here one
statute deals with a subject in general terms, and another deals with a part of the same subject
in a more detailed way.” Id. at 546-47. When such general and specific statutes in pari
materia conflict irreconcilably, the specific statute controls. Tex. Gov’t Code Ann.
§ 311.026 (Vernon 1998); see Burke at 546-47. Thus, when general and specific penal statutes
in pari materia irreconcilably conflict, the State may prosecute only under the specific statute. 
Burke at 547 n.3.
     Moore fails to show that the trial court erred in overruling his motion for election. On
appeal, Moore argues only that the indictment pleaded the manner and means of assault more
specifically than it pleaded the manner and means of retaliation. The specificity of pleading,
however, does not determine whether statutes are in pari materia or, if they are in pari
materia, which is the more specific. Moore does not argue that assault is the more specific
statute as a matter of legislative intent. Accordingly, to the extent that Moore’s argument on
appeal comports with his argument at trial, the argument is inadequately briefed. See Tex. R.
App. P. 38.1(h); McCarthy v. State, 65 S.W.3d 47, 49 n.2 (Tex. Crim. App.), cert. denied,
536 U.S. 972, 122 S. Ct. 2693, 153 L. Ed. 2d 862 (2002); Tubbs v. State, 57 S.W.3d 519,
521 (Tex. App.—Waco 2001, pet. ref’d). I would overrule Moore’s seventh issue.
Discovery Violations

     In his ninth issue, Moore contends that the trial court erred in overruling Moore’s motion
for mistrial, which alleged that the State had violated the court’s discovery orders, including a
motion to disclose exculpatory evidence. Moore forfeited his complaints.
     Some eight months before trial, Moore filed discovery motions. Moore’s discovery motion
under Texas Code of Criminal Procedure Article 39.14 moved the court to order the State to
produce certain “evidentiary material which is in the possession, custody, or control of the
State or any of its agencies,” including:
     [t]he criminal record of any prospective witness, including indictments,
convictions, acquittals or charges now pending against any State witness which
information might conceivably be useful to the defense to determine whether there
exists bias or prejudice on the part of the State’s witnesses.

See Tex. Code Crim. Proc. Ann. art. 39.14 (Vernon Supp. 2004). His Brady motion moved
the court to order the State to “[d]isclose to the Defendant any exculpatory and/or mitigating
facts within the possession, custody, or control of the District Attorney or any of his agents.” 
See Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Several
weeks before trial, the court granted the Brady motion, and granted the Article 39.14 motion in
part, including granting the paragraph quoted above.
     On the second day of trial, Moore again sought enforcement of the court’s orders. The
attorney for the State responded that the State did not have in its possession any material
covered by the discovery orders which the State had not already provided to Moore.
     Later that day, the State called Dandy Earley, a Venus ISD principal and assistant
superintendent. After Earley testified on direct examination, Moore elicited from Earley
outside the presence of the jury that Earley had been indicted, but not arrested, for burglary. 
On the basis of the State’s non-disclosure of Earley’s indictment, Moore moved for mistrial. 
The attorneys for the State stated on the record that they were unaware of the indictment. 
When the trial court asked Moore how the indictment was material, Moore responded only that
the State’s non-disclosure called into question the State’s good faith. Moore did not move for a
continuance. The trial court overruled the motion. Moore later introduced the indictment
against Earley for purposes of the appellate record.
     In order to preserve for appellate review a Brady complaint concerning evidence that comes
to light during trial, the defendant must move for a continuance to prepare to respond to the
evidence. Wilson v. State, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999); Yates v. State, 941
S.W.2d 357, 364 (Tex. App.—Waco 1997, pet. ref’d); Apolinar v. State, 106 S.W.3d 407,
421 (Tex. App.—Houston [1st Dist.] 2003, pet. granted on other grounds); but see Keeter v.
State, 105 S.W.3d 137, 144 (Tex. App.—Waco 2003, pet. granted) (plurality op.) (dicta)
(“Brady claims should . . . need not be ‘preserved’ for appellate review.”). Likewise, in order
to preserve a complaint concerning discovery, a party must move for a continuance. Smith v.
State, 779 S.W.2d 417, 431 (Tex. Crim. App. 1989).
     Moore failed to move for a continuance to prepare to respond to the evidence of the
indictment against Earley, which evidence, in any case, was already in Moore’s possession. 
Thus, Moore forfeited his complaint. I would overrule Moore’s ninth issue.
CONCLUSION

     I would affirm the judgment.
 
TOM GRAY
Chief Justice
Concurring opinion and dissent to 
  order granting motion for rehearing delivered and filed July 21, 2004
Publish