# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00781-CR

**Abram Harker Jeffs, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF SCHLEICHER COUNTY, 51ST JUDICIAL DISTRICT NO. 1002, THE HONORABLE BARBARA L. WALTHER, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Appellant Abram Harker Jeffs and nine other members of the Fundamentalist Church of Jesus Christ of Latter Day Saints (FLDS), living at the YFZ (Yearning for Zion) Ranch in Schleicher County, Texas, were indicted for sexual assault of a child.[1] *See* Tex. Penal Code Ann. § 22.011(a)(2)(A) (West 2011). Subsequently, a jury convicted appellant and assessed his punishment at confinement for 17 years in the Institutional Division of the Texas Department of Criminal Justice and, in addition, assessed a $10,000 fine.[2] *See id.* §§ 12.32, 22.011(a)(2)(A), 22.011(f) (West 2011). On appeal, appellant raises thirteen points of error. We affirm.

---

[1] Some of the other individuals were also indicted for bigamy. Appellant, however, was charged only with sexual assault of a child.

[2] After finding him guilty, the jury found the enhancement paragraph to be true, subjecting appellant to an increased punishment range. *See* Tex. Penal Code Ann. §§ 12.32, 22.011(f) (West 2011). The enhancement paragraph alleged that the victim was a person whom appellant was prohibited from marrying, purporting to marry, or living with under the appearance of being married. *See id.* §§ 22.011(f), 25.01(e) (West Supp. 2011).

**FACTUAL AND PROCEDURAL BACKGROUND**

The factual and procedural background of this case is fully discussed in prior opinions of this Court, most recently in our opinion in *Jeffs v. State*, No. 03-10-00272-CR, 2012 WL 601846, at *1-4 (Tex. App.—Austin Feb. 24, 2012, no pet. h.) (mem. op., not designated for publication), and will not be repeated here. We discuss further background details only as necessary to address the points of error raised by appellant in this appeal.

**DISCUSSION**

**I. SUFFICIENCY OF THE EVIDENCE**

In his first point of error, appellant challenges the sufficiency of the evidence. He first asserts that the evidence is insufficient to support his conviction for sexual assault of a child because the State failed to prove the element of penetration. He then contends that the evidence is insufficient because it fails to demonstrate that the sexual assault occurred in Texas.

*Additional Background*

Appellant, a lifelong member of FLDS, moved to the YFZ Ranch in Schleicher County, Texas, in February 2004 with his family—including multiple "celestial wives" and several children—and lived with them in a single residence on the ranch. On October 5, 2005, appellant was "sealed" in a spiritual or celestial marriage to S. Johnson, a female FLDS member born November 13, 1990, who had moved to the YFZ Ranch in January 2005. The ceremony took place at the "prophet's" house on the ranch in Schleicher County when S. Johnson was 14 years old and appellant was 34. Following the celestial marriage ceremony, appellant and S. Johnson lived

together in the same household, purportedly as husband and wife. On February 7, 2007, when she was 16 years old, S. Johnson gave birth to a son. DNA testing confirmed that appellant was the biological father of the child.[3]

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

In determining the legal sufficiency of the evidence, we must consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Moff v. State*, 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004); *Allen v. State*, 249 S.W.3d 680, 688-89 (Tex. App.—Austin 2008, no pet.). We review all the evidence in the light most favorable to the

---

[3] DNA testing reflected that appellant's DNA profile matched the child's DNA profile at all 15 genetic markers analyzed. Statistical analysis of the DNA test results indicated that appellant could not be excluded as the biological father of the child, while 99.9998% of the male population was excluded as the child's father. In addition, the genetic results are 1,294,000 times more likely if appellant is the child's biological father than if a randomly selected unrelated male of his race is the father. Further, the likelihood appellant is the child's biological father is 99.99992% as compared to an untested randomly chosen male of his race.

3

verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). A legal-sufficiency review requires us to defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. When faced with a record of historical facts that supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the verdict and must defer to that resolution. *Jackson*, 443 U.S. at 326; *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010). The jury, as exclusive judge of the facts, is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton*, 235 S.W.3d at 778; *see* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979). In assessing the sufficiency of the evidence, we have a duty to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *see Winfrey v. State*, 323 S.W.3d 875, 882 (Tex. Crim. App. 2010).

### *Evidence of Penetration*

Appellant was charged with the offense of sexual assault of a child. *See* Tex. Penal Code Ann. § 22.011 (a)(2)(A), (c)(1),(2). The State alleged in the indictment, and had the burden to prove, that appellant intentionally or knowingly caused the penetration of the female sexual organ of S. Johnson, a child younger than 17 years of age who was not the spouse of appellant, with appellant's sexual organ. Appellant argues that the evidence is insufficient to prove penetration. He complains that the State's evidence was largely circumstantial and failed to eliminate the possibility

4

that S. Johnson could have become pregnant by artificial insemination.[4] He points to the lack of testimony, or other outcry evidence, from S. Johnson as support for this contention.

The lack of direct evidence is not dispositive of the issue of appellant's guilt. The State is not required to present direct evidence to establish guilt. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004); *Sanders v. State*, 346 S.W.3d 26, 32 (Tex. App.—Fort Worth 2011, pet. ref'd). Indeed, circumstantial evidence is as probative as direct evidence in establishing guilt and may alone be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Sanders*, 346 S.W.3d at 32. The law does not require that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13; *see Guevara*, 152 S.W.3d at 49; *Sanders*, 346 S.W.3d at 32. The standard of review on appeal is the same for both direct and circumstantial evidence cases. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010); *Hooper*, 214 S.W.3d at 13; *Guevara*, 152 S.W.3d at 49.

---

[4] Specifically, appellant maintains that the record demonstrates only that he was a possible sperm donor. Relying on the concurring opinion in *Griffith v. State*, appellant argues that, given modern science, fatherhood does not indisputably prove sexual intercourse, suggesting that S. Johnson could have become pregnant by artificial insemination. *See Griffith v. State*, 976 S.W.2d 241, 253 n.1 (Tex. App.—Amarillo 1998, pet. ref'd) (Quinn, J., concurring). Appellant did not offer evidence at trial that S. Johnson became pregnant by some act other than sexual intercourse with him or present his theory of artificial insemination to the jury in any way.

Moreover, appellant's reliance on the *Griffith* concurrence is somewhat misplaced, as Justice Quinn's reference to artificial insemination was contained in a footnote to an explicit statement recognizing that "[o]ne way to prove that [the defendant] had intercourse [with the alleged victim] was to prove that he was the infant's father. Indeed, if he was the father then it would be quite reasonable to deduce that he had intercourse with the mother." *Id.*

Moreover, it is not incumbent upon the State to exclude "every reasonable hypothesis other than guilt" for the evidence to be considered sufficient.[5] *Geesa v. State*, 820 S.W.2d 154, 157-61 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570, 571 (Tex. Crim. App. 2000); *Sanders*, 346 S.W.3d at 32; *Villarreal Lopez v. State*, 267 S.W.3d 85, 97-98 (Tex. App.—Corpus Christi 2008, no pet.) (citing *Harris v. State*, 133 S.W.3d 760, 763-65 (Tex. App.—Texarkana 2004, pet. ref'd)); *see Orona v. State*, 836 S.W.2d 319, 322 (Tex. App.—Austin 1992, no pet.) ("*Geesa* rightfully abolished the logically inconsistent requirement in a circumstantial-evidence case that a legal-sufficiency review, in which the appellate court must view the evidence in the light most favorable to the prosecution, must also negate the existence of any alternate reasonable hypothesis inconsistent with the defendant's guilt.")

In a prosecution for sexual assault of a child, penetration may be proven by circumstantial evidence. *See Villalon v. State*, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990); *Nilsson v. State*, 477 S.W.2d 592, 595 (Tex. Crim. App. 1972); *Belt v. State*, 227 S.W.3d 339, 342 (Tex. App.—Texarkana 2007, no pet.); *Quinton v. State*, 56 S.W.3d 633, 641 (Tex. App.—Waco 2001, pet. ref'd). There is no requirement that the child victim testify about penetration. *Villalon*, 791 S.W.2d at 133; *Nilsson*, 477 S.W.2d at 596. Evidence of the slightest penetration is sufficient. *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992); *see Nilsson*, 477 S.W.2d at 595.

---

[5] In *Geesa v. State*, the Texas Court of Criminal Appeals expressly disavowed the "reasonable hypothesis analytical construct" for legal-sufficiency reviews. *See Geesa v. State*, 820 S.W.2d 154, 159 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000).

At trial, the jury received evidence that appellant moved to the YFZ Ranch in Schleicher County, Texas, in February 2004 and that S. Johnson moved to the ranch in January 2005. The evidence showed that appellant was sealed to S. Johnson in a celestial or spiritual marriage for "time and eternity" in October 2005 in a ceremony that was performed on the YFZ Ranch when she was 14 years old.[6] Evidence further showed that after the marriage ceremony, appellant and S. Johnson lived together in the same household on the ranch, purportedly as husband and wife, including engaging in a sexually intimate relationship.[7] Finally, the evidence showed that after being sealed in a spiritual marriage with appellant, S. Johnson gave birth to a son when she was 16 years old. DNA testing established that appellant was the biological father of her child.[8]

A fact-finder may support its verdict with reasonable inferences drawn from the evidence. *Laster*, 275 S.W.3d at 523; *Hooper*, 214 S.W.3d at 14. Jurors are free to use their

---

[6] Testimony showed that celestial or spiritual marriages in FLDS were religious unions not recognized as legal marriages by the State of Texas. A certified copy of a Utah marriage certificate reflected that appellant was already legally married to Elizabeth A. Steed at the time he entered into this spiritual marriage with S. Johnson.

[7] Evidence demonstrated that according to FLDS doctrine and teachings, a woman must be sealed in a celestial marriage with a worthy priesthood man in order to gain eternal salvation. Thus, a celestial marriage was a significant, if not the most significant, event in the life of a girl in FLDS. She was placed in such a relationship when the "prophet" deemed her worthy, regardless of her age. After such a marriage, the girl was placed in the household of her husband, who became her new "priesthood head." Throughout their lives, the girls receive continuous training on what FLDS deems the proper relationship between a wife and her husband. She is to be obedient both spiritually and physically to her husband—physical submission to him meaning being sexually intimate with him. According to FLDS doctrine and teachings, a woman's greatest mission in life is to bring forth pure and faithful children for her priesthood head.

[8] Although appellant contested one of the statistical representations of the DNA test results, he offered no controverting evidence regarding the fact that his DNA profile contained all of the obligate paternal alleles of the true biological father of the child.

common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence. *Obigbo v. State*, 6 S.W.3d 299, 306 (Tex. App.—Dallas 1999, no pet.); *Jones v. State*, 900 S.W.2d 392, 399 (Tex. App.—San Antonio 1995, pet. ref'd); *Wawrykow v. State*, 866 S.W.2d 87, 88 (Tex. App.—Beaumont 1993, pet. ref'd); *see Saenz v. State*, 976 S.W.2d 314, 322 (Tex. App.—Corpus Christi 1998, no pet.) ("Jurors are expected to draw upon their own experiences and common knowledge and apply them to the facts at hand.").

In this case, the circumstantial evidence of penetration is compelling. Using common sense and common knowledge, the jurors could rationally conclude that appellant and S. Johnson, as spiritual husband and wife, were involved in a sexually intimate relationship, one including sexual intercourse, that resulted in the conception of their son. Accordingly, viewing the evidence in the light most favorable to the verdict and with proper regard for the jury's power to resolve conflicts, evaluate credibility, and weigh the evidence, a rational trier of fact could have found beyond a reasonable doubt that appellant intentionally or knowingly caused the penetration of S. Johnson's sexual organ with his sexual organ when she was younger than 17. *See Jessop v. State*, No. 03-10-00078-CR, 2012 WL 1402117, at *2-4 (Tex. App.—Austin Apr. 19, 2012, no pet. h.); *see also Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. Therefore, we hold that the evidence of penetration is legally sufficient. We overrule appellant's first point of error.

### *Territorial Jurisdiction*

Also in his first point of error, appellant contends that the evidence is insufficient to prove territorial jurisdiction. He argues that the evidence is insufficient to demonstrate that

8

appellant's sexual assault of S. Johnson occurred in Texas because the direct evidence fails to show that the sexual act resulting in the conception of the child took place in Texas.

Texas has jurisdiction over an offense if the conduct constituting the offense occurs inside this state. *See* Tex. Penal Code Ann. § 1.04(a)(1) (West 2005). Jurisdiction can be established by circumstantial evidence. *Vaughn v. State*, 607 S.W. 2d 914, 920 (Tex. Crim. App. 1980); *Gunter v. State*, 327 S.W.3d 797, 799-800 (Tex. App.—Fort Worth 2010, no pet.); *see, e.g.*, *Walker v. State*, 195 S.W.3d 250, 257-58 (Tex. App.—San Antonio 2006, no pet.); *James v. State*, 89 S.W.3d 86, 89 (Tex. App.—Corpus Christi 2002, no pet.). It is unclear whether the State must prove territorial jurisdiction beyond a reasonable doubt or by a preponderance of the evidence. *See* *Torres v. State*, 141 S.W.3d 645, 654 (Tex. App.—El Paso 2004, pet. ref'd). Regardless of which standard is applied, we conclude that the evidence is legally sufficient to establish territorial jurisdiction in Texas.

The circumstantial evidence—viewed in the light most favorable to the verdict and with proper respect for the jury's power to resolve conflicts, evaluate credibility, and weigh the evidence—showed that appellant and S. Johnson lived together in a sexually intimate relationship as spiritual husband and wife on the YFZ Ranch in Schleicher County, Texas, prior to, during, and after the birth of their child. We hold that this is sufficient circumstantial evidence to support a finding by a jury beyond a reasonable doubt that appellant sexually assaulted S. Johnson in Texas.[9]

---

[9] Appellant suggests that the State's proof failed because the circumstantial evidence placing appellant in Texas around the date of the child's conception was "far too tenuous." However, the jury, as exclusive judge of the facts, is entitled to weigh the evidence and draw reasonable inferences therefrom. *See Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).

9

*See Jessop*, 2012 WL 1402117, at *4; *see also Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778; *Geesa*, 820 S.W.2d at 155, 161. Therefore, the evidence is sufficient to prove that Texas has territorial jurisdiction.[10] We overrule appellant's second point of error.

## II. CHURCH RECORDS

In his second and third points of error, appellant argues that the trial judge erred in admitting documentary evidence seized from the vaults of the temple and temple annex of the YFZ Ranch. These two points of error and the arguments made are identical to those raised and addressed in *Jessop v. State*, 2012 WL 1402117, at *16-20, and *Keate v. State*, No. 03-10-00077-CR, 2012 WL 896200, at *5-10 (Tex. App.—Austin Mar. 16, 2012, no pet. h.) (mem. op., not designated for publication). In those opinions, we concluded that the trial court did not abuse its discretion in admitting the complained-of documents. *See Jessop*, 2012 WL 1402117, at *16-20; *Keate*, 2012 WL 896200, at *5-10. We do not repeat that discussion here. For the reasons stated in our opinions in *Jessop* and *Keate*, we overrule appellant's second and third points of error.

## III. MOTION TO QUASH THE INDICTMENT

In his fourth point of error, appellant challenges the trial court's denial of his motion to quash the indictment, which complained of impermissible grand jury procedures in Schleicher County. This point of error and the arguments made are identical to those raised and addressed in *Jeffs v. State*, 2012 WL 601846, at *11-18. There, we concluded that the trial court did not abuse

---

**10** Because we find the evidence legally sufficient under the more stringent beyond-a-reasonable-doubt standard, it would also be sufficient under the preponderance-of-the-evidence standard.

its discretion in denying the defendants' joint motion to quash the indictment. *See id.* We do not repeat that discussion here. For the reasons stated in our opinion in *Jeffs*, we overrule appellant's fourth point of error.

## IV. PUNISHMENT EVIDENCE

In two points of error, appellant contends that the trial court erroneously admitted the testimony of two witnesses—Dr. Lawrence Beall and Jonathan Broadway—during the punishment phase of trial.

### Dr. Lawrence Beall

In his fifth point of error, appellant complains that the trial judge erred in admitting the testimony of Dr. Lawrence Beall, a clinical psychologist, during the punishment phase of trial. This point of error and the arguments made are identical to those raised and addressed in *Jessop v. State*, 2012 WL 1402117, at *22-29, and *Keate v. State*, 2012 WL 896200, at *12-18. In those opinions, we concluded that the trial court did not abuse its discretion in admitting the complained-of testimony. *See Jessop*, 2012 WL 1402117, at *22-29; *Keate*, 2012 WL 896200, at *12-18. We do not repeat that discussion here. For the reasons stated in our opinions in *Jessop* and *Keate*, we overrule appellant's fifth point of error.

### Agent Jonathan Broadway

During the punishment phase of trial, FBI Agent Jonathan Broadway testified that Warren Jeffs, the "prophet" of FLDS and appellant's half brother, was a "fugitive from justice" from

11

June 2005 until his capture at the end of August 2006.[11] The agent further testified that Warren Jeffs was placed on the FBI's Ten Most Wanted list—a list the FBI uses to garner publicity for fugitives deemed a menace to society to seek the public's assistance in capturing the fugitive—in May 2006 and remained on the list until his arrest. Agent Broadway stated that Warren Jeffs's fugitive status was widely publicized in the media, locally in the Eldorado/San Angelo area as well as nationally. He also testified that during the time his brother was a wanted fugitive, appellant had multiple encounters with law enforcement officers.

In his sixth point of error, appellant maintains that the trial court erred in allowing Agent Broadway's testimony. He asserted at trial, and argues on appeal, that the agent's testimony about the fugitive status of Warren Jeffs was irrelevant under Article 37.07 of the Texas Code of Criminal Procedure and was more prejudicial than probative under Rule 403 of the Texas Rules of Evidence. The State maintained that the agent's testimony demonstrated appellant's capacity to conceal matters from law enforcement (not revealing the whereabouts of Warren Jeffs) and his willingness to maintain personal contact with a publicly known fugitive. The State asserted that both of these matters were relevant to the issue of whether appellant was a suitable candidate for community supervision.[12]

---

[11] The evidence in the record reflected that appellant and Warren Jeffs were the sons of the former "prophet," Rulon Jeffs, but had different mothers.

[12] The evidence in the record demonstrated, and the State acknowledged, that appellant had never before been convicted of a felony offense and thus was eligible for community supervision. *See* Tex. Code. Crim. Proc. Ann. art. 42.12, § 4 (West Supp. 2011).

### Standard of Review

We review a trial court's decision to admit punishment evidence under an abuse-of-discretion standard. *Davis v. State*, 329 S.W.3d 798, 802 (Tex. Crim. App. 2010); *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). We may not disturb a trial court's evidentiary ruling absent an abuse of discretion. *McGhee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007). The trial court abuses its discretion only when its decision lies "outside the zone of reasonable disagreement." *Davis*, 329 S.W.3d at 802; *Walters*, 247 S.W.3d at 217.

### Relevance of Testimony and Article 37.07

Section 3(a) of article 37.07 of the Texas Code of Criminal Procedure governs the admissibility of evidence at the punishment phase of a non-capital criminal trial and grants the trial court broad discretion to admit evidence that the court deems relevant to sentencing. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2011); *Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008). Admissibility of evidence at the punishment phase of a trial of a non-capital felony offense is a function of policy rather than relevancy. *Hayden v. State*, 296 S.W.3d 549, 552 (Tex. Crim. App. 2009); *Come v. State*, 82 S.W.3d 486, 491 (Tex. App.—Austin 2002, no pet.). In ascertaining what is relevant to sentencing, the focus is on what is helpful to a jury in deciding an appropriate sentence for a defendant. *Sims*, 273 S.W.3d at 295; *McGhee*, 233 S.W.3d at 318; *Come*, 82 S.W.3d at 491. Giving complete information about the defendant so the jury can tailor an appropriate sentence is one of the policy reasons to be considered when determining whether to admit punishment evidence. *Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004) (citing *Mendiola v. State*, 21 S.W.3d 282, 285 (Tex. Crim. App. 2000)).

Appellant argues against the relevance of the evidence of his brother's fugitive status because he claims it was unreasonable for the State to assert that he should have turned Warren Jeffs in to authorities. He maintains that the State only speculated that he knew that Warren Jeffs was a fugitive or that he knew the whereabouts of Warren Jeffs. However, the relevance was not simply the State's contention that appellant failed to turn Warren Jeffs in to the authorities when he should have. The State also maintained that the evidence was relevant because it showed that appellant had repeated personal contact with a known fugitive.

The record contains evidence reflecting that the fugitive status of Warren Jeffs was widely publicized locally in the Eldorado and San Angelo community as well as nationally. In addition, the record contains letters that appellant wrote to Warren Jeffs throughout March 2006, during the time Warren Jeffs was a fugitive from justice. The record contains further evidence demonstrating that appellant had direct contact with Warren Jeffs when the prophet officiated over appellant's celestial marriage to his fifth wife on July 25, 2006, at a time when Warren Jeffs was on the FBI's Ten Most Wanted list. The trial court could have reasonably concluded that this evidence reflected an ongoing relationship, or appellant's willingness to maintain an ongoing relationship, with a known fugitive and was probative of appellant's character and suitability for community supervision—relevant issues in the punishment phase of this trial. Thus, we cannot say the trial court abused its discretion in admitting Agent Broadway's testimony over appellant's relevancy objection. Appellant's sixth point of error is overruled as it relates to relevance and the violation of Article 37.07.

*Prejudice and Rule 403*

Having determined that Agent Broadway's testimony was relevant, we must next weigh its probative value against its prejudicial effect. Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Davis*, 329 S.W.3d at 806; *Young v. State*, 283 S.W.3d 854, 876 (Tex. Crim. App. 2009). Further, Rule 403 does not require exclusion of evidence simply because it creates prejudice; the prejudice must be "unfair." *Martinez v. State*, 327 S.W.3d 727, 737 (Tex. Crim. App. 2010), *cert. denied*, 131 S.Ct. 2966 (2011); *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). The rule envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value. *Gayton v. State*, 331 S.W.3d 218, 227 (Tex. App.—Austin 2011, pet. ref'd) (citing *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009)).

"The term 'probative value' refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Davis*, 329 S.W.3d at 806 (citing *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007)). "'Unfair prejudice' refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* All testimony and physical evidence are likely to be prejudicial to one party or the other. *Davis*, 329 S.W.3d at 806; *Jones*, 944 S.W.2d at 653. It is only when there

exists a clear disparity between the degree of prejudice produced by the offered evidence and its probative value that Rule 403 is applicable. *Davis*, 329 S.W.3d at 806; *Hammer*, 296 S.W.3d at 568.

Evidence of appellant's personal association with a known fugitive from justice was obviously unfavorable to appellant, but we conclude it was not unfairly prejudicial—or at least that any unfair prejudice created by the evidence did not substantially outweigh its probative value. It came as part of a larger examination of appellant's character, behavior, and beliefs. In this case, the jury received evidence that appellant personally engaged in the practice of plural marriages and underage marriage as well as the reassignment of wives and children—his fifth wife, mother of his twin children, was his former stepmother. Warren Jeffs sealed appellant to this woman in a celestial marriage while he was a fugitive on the FBI's Ten Most Wanted list. The evidence of an ongoing relationship, or at least repeated contact, with a wanted fugitive was but one of the factors that allowed the jury to determine the appropriate punishment for appellant. This evidence was not so unfairly prejudicial that there was a clear disparity between the degree of the prejudice and its probative value. Accordingly, the trial court did not abuse its discretion in admitting this evidence over appellant's 403 objection. Appellant's sixth point of error is overruled as it relates to the violation of Rule 403.

## V. DNA EVIDENCE

In his seventh point of error, appellant maintains that the trial judge erred in admitting evidence of the probability-of-paternity statistic of the DNA test results because the use of a 0.5 prior probability in calculating the statistic violates the presumption of innocence and shifts the burden of proof. This point of error and the arguments made are identical to those raised and addressed in

16

*Jessop v. State*, 2012 WL 1402117, at \*5-16. There, we concluded that the trial court did not abuse its discretion in admitting the complained-of DNA evidence. *See id.* We do not repeat that discussion here. For the reasons stated in our opinion in *Jessop*, we overrule appellant's seventh point of error.

## VI. MOTION TO SUPPRESS EVIDENCE

In points of error eight through 13, appellant challenges the trial court's denial of his motion to suppress. These six points of error and the arguments made are identical to those raised and addressed in *Emack v. State*, 354 S.W.3d 828, 833-40 (Tex. App.—Austin 2011, no pet.), and *Jeffs v. State*, 2012 WL 601846, at \*4-11. In those opinions, we concluded that the trial court did not abuse its discretion in denying the defendants' joint motion to suppress. *See Emack*, 354 S.W.3d at 833-40; *Jeffs*, 2012 WL 601846, at \*4-11. We do not repeat that discussion here. For the reasons stated in our opinions in *Emack* and *Jeffs*, we overrule appellant's points of error eight through 13.

## CONCLUSION

Having found that the evidence is sufficient to prove both penetration and territorial jurisdiction, we hold the evidence is sufficient to support appellant's conviction for sexual assault of a child. In addition, we hold that the trial court did not abuse its discretion in admitting the church and family records recovered from the YFZ Ranch, the probability-of-paternity statistic of the DNA evidence, or the testimony of Dr. Lawrence Beall and Agent Jonathan Broadway during the punishment phase of trial. We further hold that the trial court did not abuse its discretion in denying appellant's motion to quash the indictment and motion to suppress evidence.

The judgment of conviction is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed:   May 10, 2012

Do Not Publish

18